LAW OFFICE OF DONNIE R. COX
DENNIS B. ATCHLEY, SBN: 70036
DONNIE R. COX, SBN: 137950
402 North Nevada St.
Oceanside, CA 92054-2025
(760) 400-0263

LAW OFFICE OF PAUL W. LEEHEY
PAUL W. LEEHEY, SBN: 92009
205 W. Alvarado Street
Fallbrook, CA
92028-2002
(760) 723-0711

ATTORNEYS FOR PLAINTIFF

FILED

07 OCT -1  PM 3: 59

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN CALIFORNIA DISTRICT**

| | |
|---|---|
| Brenda L. MARSH,<br><br>            Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, JAY S. COULTER; and DOES 1 to 100, Inclusive,<br><br>            Defendants. | CASE NO. **07 CV  1923 LAB  (NLS)**<br><br>**COMPLAINT FOR DAMAGES**<br>**Violation of Civil Rights 42 U.S.C. §1983 under Fourteenth Amendment; Monell related claims under 42 U.S.C. §1983; Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress; Violations of State Civil Rights, CC 43, 52.1**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges as follows:

**INTRODUCTION**

1.   Plaintiff BRENDA L. MARSH was, at all times referenced herein, a resident of the County of San Diego, State of California. She is now a resident of the State of Colorado.

2.   Defendant COUNTY OF SAN DIEGO ("COUNTY") is, and at all times mentioned herein was, a COUNTY governmental entity organized under the laws of the State of California.  At all times mentioned herein, the COUNTY had a non-delegable duty under the law to implement policies,

COMPLAINT                                1

1  practices and procedures to prevent the dissemination by its current

2  and former agents and employees of autopsy photos without a court order

3  as required by Code of Civil Procedure section 129.

4  3.   Defendant JAY S. COULTER (hereinafter "COULTER") is a resident of

5  the State of California and, from 1972 to 2000, was a Deputy District

6  Attorney employed by the COUNTY OF SAN DIEGO.   At all times mentioned

7  herein, COULTER had a non delegable duty to refrain from copying and

8  disseminating autopsy photographs without a court order in violation of

9  California Code of Civil Procedure section 129.

10  4.   Defendant DOES 1 to 100, inclusive, are sued herein under

11  fictitious names, their true names and capacities being unknown to

12  Plaintiff.   Plaintiff will amend this complaint to allege their true

13  names and capacities when ascertained.

14  5.   Plaintiff BRENDA L. MARSH (hereinafter "BRENDA") is informed and

15  believes and thereon alleges that each of the fictitiously named

16  Defendants is responsible in some manner for the occurrences herein

17  alleged and that Plaintiff's damages were proximately caused by such

18  Defendants.

19  6.   Plaintiff is informed and believes and thereon alleges that at

20  all times mentioned herein, each of the Defendants was the agent and

21  employee of each of the remaining Defendants, and in doing the things

22  hereinafter alleged, were acting within the course and scope of such

23  agency and employment.

24  7.   California Code of Civil Procedure section 129, enacted in 1968 as

25  A.B. 4,   reads in pertinent part as follows:

26      Notwithstanding any other provision of law, no copy, reproduction,
        or facsimile of any kind shall be made of any photograph, negative,
27      or print, including instant photographs and video tapes, of the
        body, or any portion of the body, of a deceased person, taken by
28      or for the coroner at the scene of death or in the course of a post

---

COMPLAINT                              2

mortem examination or autopsy made by or caused to be made by the coroner, except for use in a criminal action or proceeding in this state which relates to the death of that person, or except as a court of this state permits, by order after good cause has been shown and after written notification of the request for the court order has been served, at least five days before the order is made, upon the district attorney of the county in which the post mortem examination or autopsy has been made or caused to be made.

8.   California Code of Civil Procedure section 129 was passed by the California Legislature, in the words of its sponsor, Assemblyman Jim Bear, to establish "that the family of a deceased person has the right of privacy to limit reproduction of gruesome autopsy photographs". (Letter to Governor Reagan from Assemblyman Bear dated September 18, 1968, Legislative History Report and Analysis for Assembly Bill 4x, attached hereto as Exhibit "1").

9.   As the Legislative Counsel's Digest notes, "It is the policy of the State of California to protect individuals and families against unconscionable invasions of their privacy. The reproduction for unrelated or improper purposes, of any photograph of the body of a deceased person taken in the course of a post mortem examination or autopsy is contrary to such policy"(See Legislative Counsel's Digest attached hereto as Exhibit "2").

10.  Plaintiff is the wife of Kenneth Marsh, Plaintiff in case number 05 CV 1568 WQH (AJB) now pending before this court, the Honorable Judge William Q. Hayes presiding. On Friday, May 13th, 2007, the deposition of JAY S. COULTER was taken in that action. In his sworn testimony, witness COULTER revealed, for the first time, that he had made unauthorized copies of 16 autopsy photos taken of Phillip S. Buell, Plaintiff's son, on April 28, 1983, and disseminated at least one of them to a newspaper and a television station in February of 2006 without first obtaining a court order to do so. Prior to said deposition, Plaintiff was ignorant of this illegal copying and dissemination of her son's autopsy

3

1  photographs to the news media.

2  11.    Plaintiff filed a claim against COUNTY on May 31, 2007, within

3  six (6) months of learning of the violation of Code of Civil Procedure

4  section 129 by Jay S. Coulter in his deposition on May 13, 2007.  A copy

5  of said claim against the COUNTY is attached hereto as Exhibit "3".  On

6  July 23, 2007, Defendant COUNTY rejected Plaintiff's claim. A copy of

7  said rejection is attached hereto as Exhibit "3".

8                          **FIRST CAUSE OF ACTION**
             **(Fourteenth Amendment violation under 42 U.S.C. §1983)**
9

10  12.    Plaintiff realleges and incorporates by reference each of the

11  allegations contained in paragraphs 1 - 11 of this Complaint.

12  13.    Code of Civil Procedure section 129 created a liberty interest

13  protected by the Fourteenth Amendment to the United States Constitution

14  by placing substantive limitations on official discretion through its

15  regulation. No autopsy photo is allowed to be copied unless due process,

16  (notice and a opportunity to be heard) is afforded, and adherence to

17  this procedure is mandatory. Both the United States and California

18  Constitutions afford Plaintiff the right to privacy, and Plaintiff's

19  right to privacy may not be violated unless due process is afforded by

20  those seeking to copy and/or disseminate autopsy photos.

21  14.   In December of 2001, Plaintiff wrote to COUNTY'S medical examiner

22  seeking information to provide her experts in connection with a planned

23  writ of habeas corpus to free her future husband, Kenneth Marsh, from

24  prison. In response to her request for a number of items, including

25  autopsy photographs, Plaintiff received the original of the letter dated

26  December 6, 2001, a copy of which is attached hereto, marked Exhibit "4"

27  and incorporated by reference as though fully set forth herein.

28  15.    As the Director of Operations of the San Diego County Coroner's

1    office admitted in his letter, Defendant COUNTY well knew in 2001, and

2    at all relevant times, that "pursuant to California law, a court order

3    is required to release any photograph of a decedent". Despite this

4    knowledge, no court order was sought prior to COULTER'S copying and

5    disseminating of Phillip Buell's autopsy photographs to the media.

6    16.   The aforesaid conduct of Defendants, and each of them, violated

7    Plaintiff's right to due process, including violation of the Plaintiff's

8    rights of privacy found in the Fourteenth Amendment to  the United

9    States Constitution and in Article 1 Section 1 of the California

10    Constitution.

11    17.   As a direct result of these Defendants' violation, and in

12    accordance with 42 U.S.C. §1983, Plaintiff's civil rights have been

13    violated in that she has suffered, and will continue to suffer, damages,

14    as herein described, as well as to incur attorneys' fees, costs and

15    expenses in this matter as authorized by 42 U.S.C. §1988, in an amount

16    not yet ascertained, all of which shall be shown according to proof at

17    trial.

18    18.   Defendant COULTER'S  wrongful conduct as herein alleged was

19    intentional, done with malice and recklessness and performed with a

20    conscious disregard for the rights of the Plaintiff herein, and as a

21    result of this despicable conduct, Plaintiff is therefore entitled to

22    recover punitive damages from Defendant COULTER in an amount

23    commensurate with the nature of the Defendant's wrongful acts and the

24    amount of the Defendant's wealth.

25    **SECOND CAUSE OF ACTION**
       (*Monell* **cause of action**)

26

27    19.   Plaintiff realleges and incorporates by reference each of the

28    allegations contained in paragraphs 1  - 18 of this Complaint.

20.   At all relevant times herein, Defendant COUNTY, established and/or followed policies, procedures, customs and/or practices (hereinafter collectively "policy" or "policies") which were the moving force and cause of violations of Plaintiff's constitutional rights, including those under the Fourth and Fourteenth Amendments of the United States Constitution, by, but not limited to:

    1.   The policy, practice and/or custom of failing to prevent the illegal copying and dissemination of autopsy photos by its current and former employees in violation of Code of Civil Procedure section 129;

    2.   The policy, practice and/or custom of failing to implement policies to prevent current and former employees from copying autopsy photos made pursuant to criminal investigations while they were employed by the COUNTY, and thereafter keeping them as "mementoes".

    3.   By acting with deliberate indifference in implementing a policy, practice and/or custom of inadequate training, and/or by failing to train its officers, agents and employees, including current and former deputy district attorneys, in providing the Constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to the copying and dissemination of autopsy photos without court order.

(Plaintiff reserves the right to supplement these grounds upon further information and discovery.)

21.   Defendant COUNTY had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed her

1  under the United States Constitution, including the Fourth and

2  Fourteenth Amendments, to use reasonable care to select, supervise,

3  train, control and review the activities of all agents, officers and

4  employees in their employ, including current and former deputy district

5  attorneys, and further, to refrain from acting with deliberate

6  indifference to the constitutional rights of Plaintiff herein so as to

7  not cause her the injuries and damages alleged herein.

8  22.    Defendant COUNTY breached its duties and obligations to

9  Plaintiff, as stated herein, including but not limited to, failing to

10 establish, implement and follow the correct and proper Constitutional

11 policies, procedures, customs and practices; by failing to properly

12 select, supervise, train, control, and review their agents and employees

13 as to their compliance with Constitutional safeguards; and by permitting

14 Defendant COULTER to engage in the unlawful, malicious and

15 unconstitutional conduct as herein alleged.

16 23.    Defendant COUNTY knew, or should have known, that by breaching

17 the aforesaid duties and obligations that it was foreseeable that they

18 would, and did, cause Plaintiff to be injured and damaged by their

19 wrongful policies and acts as alleged herein and that such breaches

20 occurred in contravention of public policy and as to their legal duties

21 and obligations to Plaintiff.

22 24.    At all relevant times Defendant COUNTY acted with deliberate

23 indifference to the rights of, and as to their obligations to,

24 Plaintiff, and as to established law, including but not limited to, (1)

25 by failing to establish, implement, and follow policies procedures,

26 customs and practices mandated by the U.S. Constitution and laws and

27 California laws; (2) by failing to properly supervise, manage, control,

28 and direct the activities of its officers, agents and state actors,

COMPLAINT                               7

1  including Defendant COULTER, such that the actions, or inactions of said

2  individuals operated to deprive Plaintiff of her Constitutional rights,

3  including those under the Fourth and Fourteenth Amendments to the

4  Constitution of the United States, including, but not limited to, (1)

5  failure to establish, meet or follow known and well established

6  requirements to keep confidential autopsy photographs of children.

7  (Plaintiff reserves the right to supplement said grounds based upon

8  further investigation and discovery.)

9  25.    These actions, or inactions, of Defendant COUNTY were the

10  moving force behind the unlawful copying and dissemination of autopsy

11  photos of Plaintiff's son as alleged herein; and as a result thereto,

12  Plaintiff has sustained, and will continue to sustain, general and

13  special damages as herein alleged, as well as incurring attorneys' fees,

14  costs and expenses, including those as authorized by 42 U.S.C. §1988,

15  to an extent and in an amount subject to proof at trial.

16  **THIRD CAUSE OF ACTION**
   **(Intentional Infliction of Emotional Distress brought pursuant to the**
17  **Court's supplemental jurisdiction under 28 U.S.C. §1367(a))**

18  26.    Plaintiff realleges and incorporates by reference each of the

19  allegations contained in paragraphs 1 - 25 of this Complaint.

20  27.    Defendant COULTER and DOES 1 to 100 engaged in the aforementioned

21  outrageous, unprivileged conduct including, but not limited to, causing

22  the confidential autopsy photographs of Phillip Buell to be copied and

23  disseminated to news organizations without prior court order under Code

24  of Civil Procedure section 129.

25  28.    Defendant COULTER knowingly and willfully acted with malice and

26  oppression and with the intent to harm Plaintiff in a despicable manner.

27  Therefore, Plaintiff is entitled to an award of punitive damages against

28  Defendant COULTER and DOES 1 to 100, for the purpose of punishing these

COMPLAINT                         8

1  Defendants and to deter them and others from such conduct in the future.

2                              **FOURTH CAUSE OF ACTION**
   **(Negligent Infliction of Emotional Distress brought pursuant to the**
3        **Court's supplemental jurisdiction under 28 U.S.C. §1367(a))**

4  29.    Plaintiff realleges and incorporates by reference each of the

5  allegations contained in paragraphs 1 - 28 of this Complaint.

6  30.  In December of 2001, Plaintiff wrote to COUNTY'S medical examiner

7  seeking information to provide her experts in connection with a planned

8  writ of habeas corpus to free her future husband, Kenneth Marsh, from

9  prison. In response to her request for a number of items, including

10 autopsy photographs, Plaintiff received the original of the letter dated

11 December 6, 2001, a copy of which is attached hereto, marked Exhibit "4"

12 and incorporated by reference as though fully set forth herein.

13 31.   As the Director of Operations of the San Diego County Coroner's

14 office admitted in his letter, Defendant COUNTY well knew in 2001, and

15 at all relevant times, that "pursuant to California law, a court order

16 is required to release any photograph of a decedent".

17 32.    Defendants COULTER, COUNTY and DOES 1 - 100 so negligently and

18 carelessly copied and disseminated the autopsy photographs of Phillip

19 Buell, or allowed them to be copied and disseminated, in violation of

20 Code of Civil Procedure section 129 so as to cause Plaintiff damage.

21 33.     As a direct and proximate consequence of the actions of

22 Defendants, and each of them, Plaintiff has been injured in her health,

23 strength and activity and has suffered extreme emotional distress and

24 mental suffering upon learning that said photos had been  copied and

25 disseminated illegally as herein alleged.

26                              **FIFTH CAUSE OF ACTION**
   **(Violation of State Civil Rights brought pursuant to the Court's**
27        **supplemental jurisdiction under 28 U.S.C. §1367(a)**

28 34.  Plaintiff realleges and incorporates by reference each of the

---

COMPLAINT                          9

1  allegations contained in paragraphs 1 - 33 of this Complaint.

2  35.  The Defendants COUNTY, COULTER and DOES 1 to 100, inclusive, are

3  individuals and entities who were acting under color of law during the

4  investigation and subsequent prosecution of Plaintiff's husband, Kenneth

5  Marsh, and thereafter as herein before described.

6  36.  As a result of the aforementioned actions, conduct, policies

7  and/or omissions of COUNTY, COULTER and DOES 1 to 100, inclusive, as

8  adopted and incorporated by paragraphs previously set forth herein,

9  Defendants, and each of them, interfered with the exercise and enjoyment

10 of Plaintiff's rights secured by the United States Constitution and

11 other Federal laws, and the Constitution and laws of the State of

12 California, and including, but not limited to, Plaintiff's State and

13 Federal right of privacy and those rights under Civil Code §§43 and

14 52.1, and other applicable state and federal laws.

15 37.  These violations of the Plaintiff's rights by said Defendants

16 and DOES 1 to 100, inclusive, and each of them, are guaranteed by Civil

17 Code §§43 and 52.1 entitling Plaintiff to compensatory and punitive

18 damages, injunctive relief, statutory civil penalty (including

19 $25,000.00 as to each individual Defendant) and attorneys' fees, all of

20 which are provided for by laws and the Constitution of the State of

21 California and are requested herein.

22 38.  As a direct and proximate result of the aforementioned conduct

23 of Defendants', and each of them, Plaintiff has suffered and will

24 continue to suffer great emotional and psychological distress,

25 humiliation and mental anguish, as hereintofor described the nature and

26 amount of which will be shown according to proof at trial.

27 ///

28 ///

COMPLAINT                                    10

**PRAYER**

WHEREFORE, Plaintiff prays Judgment against the Defendants as follows:

**FIRST CAUSE OF ACTION – VIOLATION OF CIVIL RIGHTS – FOURTEENTH AMENDMENT**

1.   General damages in an amount to be determined by proof at trial.

2.   Punitive damages as against Defendant COULTER only.,

3.   Attorneys' fees, costs and expenses as authorized by 42 U.S.C. §1988 according to proof.

4.   Costs and interest according to law.

5.   Any other and further relief that the Court considers proper.

**SECOND CAUSE OF ACTION – *MONELL* RELATED CLAMS**

1.   General damages in an amount to be determined by proof at trial.

2.   Attorneys' fees, costs and expenses as authorized by 42 U.S.C. §1988 according to proof.

3.   Costs and interest according to law.

4.   Any other and further relief that the Court considers proper.

5.   Any other and further relief that the Court considers proper.

**THIRD CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1.   General damages in an amount to be determined by proof at trial.

2.   Punitive damages as against  Defendant COULTER only.

3.   Costs and interest according to law.

4.   Any other and further relief that the Court considers proper.

5.   Any other and further relief that the Court considers proper.

**FOURTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1.   General damages in an amount to be determined by proof at trial.

2.   Costs and interest according to law.

3.   Any other and further relief that the Court considers proper.

///

COMPLAINT

**FIFTH CAUSE OF ACTION – VIOLATION OF STATE CIVIL RIGHTS**

1.    General damages in an amount to be determined by proof at trial.

2.    Punitive damages as against named Defendants only.

3.    Attorneys' fees, sanctions, injunctive relief, civil penalty and expenses as authorized by statute.

4.    Costs and interest according to law.

5.    Any other and further relief that the Court considers proper.

Date: September 28, 2007          **LAW OFFICE OF DONNIE R. COX**

DONNIE R. COX, Attorney for
Plaintiff, BRENDA L. MARSH

**Exhibit 1**

STATE CAPITOL
ROOM 6017
SACRAMENTO, CALIFORNIA 95814

SAN DIEGO LEGISLATIVE OFFICE
U.S. GRANT HOTEL, SUITE 634
THIRD AND BROADWAY
SAN DIEGO, CALIFORNIA 92101
PHONE: 239-9456

COMMITTEES
PUBLIC HEALTH
ELECTIONS AND
REAPPORTIONMENT

MEMBER: CALIFORNIA LAW
REVISION COMMISSION
STANFORD UNIVERSITY
STANFORD, CALIFORNIA

# Assembly
# California Legislature

### F. JAMES (JIM) BEAR
ASSEMBLYMAN, SEVENTY-NINTH DISTRICT

VICE CHAIRMAN
COMMITTEE ON FINANCE AND INSURANCE

September 18, 1968

Hon. Ronald Reagan
Governor of California
Office of the Governor
State Capitol, Sacramento

Dear Governor Reagan:

This is to request your signature on AB #4.  The Legislature has passed AB #4 (The Senate 33 to 2; The Assembly 59 to 0), which limits reproduction of autopsy photographs of the late Robert F. Kennedy.

Thank you, Governor, for issuing the special Proclamation which allowed the Legislature to act upon this important matter establishing that the family of a deceased person has the right of privacy to limit reproduction of gruesome autopsy photographs.

The problem was originally brought to the attention of the Legislature by District Attorney Younger of Los Angeles who was concerned about some 300 autopsy photographs taken of the late Robert F. Kennedy possibly being reproduced by publications catering to sensationalism.

AB #4 was introduced to eliminate any objections of coroners, doctors, medical schools or law enforcement officials.  The objections raised in your veto message have been satisfied, and there now is a specific exception in AB #4 so that the bill does not apply to "medical or scientific education or research."  I know of no opposition at this time.

Very truly your

F. JAMES BEAR

FJB:bka

(800) 666-1917    LEGISLATIVE INTENT SERVICE

PF - 7



# LEGISLATIVE
# INTENT SERVICE, INC.

712 Main Street, Suite 200, Woodland, CA 95695
(800) 666-1917 • Fax (530) 668-5866 • www.legintent.com

## DECLARATION OF MARIA A. SANDERS

I, Maria A. Sanders, declare:

I am an attorney licensed to practice in California, State Bar No. 092900, and am employed by Legislative Intent Service, Inc. a company specializing in researching the history and intent of legislation.

Under my direction and the direction of other attorneys on staff, the research staff of Legislative Intent Service, Inc. undertook to locate and obtain all documents relevant to the enactment of Assembly Bill 4x of 1968x. Assembly Bill 4x was approved by the Legislature and was enacted as Chapter 6 of the Statutes of 1968x.

The following list identifies all documents obtained by the staff of Legislative Intent Service, Inc. on Assembly Bill 4x of 1968x. All listed documents have been forwarded with this Declaration except as otherwise noted in this Declaration. All documents gathered by Legislative Intent Service, Inc. and all copies forwarded with this Declaration are true and correct copies of the originals located by Legislative Intent Service, Inc. In compiling this collection, the staff of Legislative Intent Service, Inc. operated under directions to locate and obtain all available material on the bill.

### EXHIBIT A - ASSEMBLY BILL 4X OF 1968X:

1. All versions of Assembly Bill 4x (Bear-1968x);
2. Procedural history of Assembly Bill 4x from the 1968 Assembly Final History;
3. Excerpt regarding Assembly member Frederick James Bear from the 1968 "Legislative Handbook".
4. Post-enrollment documents regarding Assembly Bill 4x;
5. Biennial Report of the Chief Medical Examiner-Coroner regarding Photography, dated 1965-66, 1966-67.

**EXHIBIT B - ASSEMBLY BILL 1711 OF 1968 (VETOED PREDECESSOR)**:

1. All versions of Assembly Bill 1711 (Bear-1968);
2. Procedural history of Assembly Bill 1711 from the 1968 <u>Assembly Final History</u>;
3. Excerpt regarding Assembly member Frederick James Bear from the 1968 "Legislative Handbook".
4. Post-enrollment documents regarding Assembly Bill 1711;
5. Excerpt regarding Assembly Bill 1711 from the <u>Journal of the Assembly</u>, September 9, 1968;
6. Biennial Report of the Chief Medical Examiner-Coroner regarding Photography, dated 1965-66, 1966-67.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 2nd day of July, 2007 at Woodland, California.

MARIA A. SANDERS

CALIFORNIA LEGISLATURE—1985–86 REGULAR SESSION

# ASSEMBLY BILL

No. 543

## Introduced by Assembly Member Clute

February 4, 1985

An act to amend Section 129 of the Code of Civil Procedure, to amend Sections 27491, 27491.1, 27491.2, and 27491.3 of the Government Code, and to amend Section 10250 of the Health and Safety Code, relating to coroners.

### LEGISLATIVE COUNSEL'S DIGEST

AB 543, as introduced, Clute.   Coroners.

(1) Existing law prohibits the making of a copy, reproduction, or facsimile of any photograph, negative, or print of the body or portion of the body of a deceased person taken in the course of a coroner's autopsy or postmortem examination.

This bill would include instant photographs of the body or portion of the body of a deceased person and would extend the prohibition to photographs taken by or on behalf of the coroner at the scene of death.

(2) Existing law requires the coroner to investigate deaths occurring under specified circumstances. The law also requires a physician, funeral director, or other person to notify the coroner of deaths occurring under specified circumstances. Existing law also requires any person having possession of remains for purposes of interment, where the cause of death is one which the coroner is required to investigate, to deliver the remains to the coroner, upon demand.

This bill would require any funeral director, physician, or other person having charge of a body, when death occurred as a result of causes or circumstances which the coroner is required to investigate, to immediately notify the coroner,

AB 543

— 2 —

and would make it a misdemeanor to fail to do so.

The bill would authorize a coroner to exhume the body of a deceased person when necessary to discharge his or her responsibilities of investigating deaths occurring under specified circumstances.

(3) Existing law requires the coroner to immediately notify specified law enforcement authorities in cases in which a person has suddenly died under circumstances affording a reasonable ground to suspect that death was occasioned by the act of another by criminal means. The notification is required to be made by telephone or written report.

This bill would make the provision applicable to circumstances in which death did not occur suddenly, and would permit the coroner's notification of law enforcement authorities to be made by the most direct communication available.

(4) Existing law prohibits a body from being disturbed or moved from the position or place of death without permission of the coroner or the coroner's deputy, in cases in which death occurred under circumstances which the coroner is required to investigate.

This bill would make the violation of this prohibition a misdemeanor.

(5) Existing law authorizes the coroner to lock the premises at the scene of a death occurring under circumstances which the coroner is required to investigate.

This bill would make the entering of the premises or the tampering or removing of any lock or seal a misdemeanor.

The bill would also make it a misdemeanor for any person to search for or remove papers, moneys, or weapons constituting the estate of the deceased, from the person of the deceased, or from the premises, prior to arrival of the coroner or without permission of the coroner.

(6) Article XIII B of the California Constitution and Sections 2231 and 2234 of the Revenue and Taxation Code require the state to reimburse local agencies and school districts for certain costs mandated by the state. Other provisions require the Department of Finance to review statutes disclaiming these costs and provide, in certain cases, for making claims to the State Board of Control for reimbursement.

By expanding the notification requirements to include deaths other than those which occurred suddenly, the bill would enlarge the duties of the coroner and would thereby impose a state-mandated local program.

This bill would impose a state-mandated local program by imposing criminal sanctions on specified activities, thereby increasing the cost of law enforcement services provided by local agencies.

This bill would provide that no appropriation is made by this act for the purpose of making reimbursement pursuant to the constitutional mandate or Section 2231 or 2234, but would recognize that local agencies and school districts may pursue their other available remedies to seek reimbursement for these costs.

This bill would provide that, notwithstanding Section 2231.5 of the Revenue and Taxation Code, this act does not contain a repealer, as required by that section; therefore, the provisions of the act would remain in effect unless and until they are amended or repealed by a later enacted act.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

AB 543

— 3 —

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 129 of the Code of Civil
2  Procedure is amended to read:
3  129. Notwithstanding any other provision of law, no
4  copy, reproduction, or facsimile of any kind shall be made
5  of any photograph, negative, or print, *including instant*
6  *photographs,* of the body, or any portion of the body, of
7  a deceased person, taken *by or for the coroner at the*
8  *scene of death* or in the course of a post mortem
9  examination or autopsy made by or caused to be made by
10  the coroner, except for use in a criminal action or
11  proceeding in this state which relates to the death of that
12  person, or except as a court of this state permits, by order
13  after good cause has been shown and after written
14  notification of the request for the court order has been
15  served, at least five days before the order is made, upon

1 the district attorney of the county in which the post
2 mortem examination or autopsy has been made or caused
3 to be made.
4 This section shall not apply to the making of such a
5 copy, reproduction, or facsimile for use in the field of
6 forensic pathology, for use in medical, or scientific
7 education or research, or for use by any law enforcement
8 agency in this or any other state or the United States.
9 This section shall apply to any such copy, reproduction,
10 or facsimile, and to any such photograph, negative, or
11 print, heretofore or hereafter made.
12 SEC. 2. Section 27491 of the Government Code is
13 amended to read:
14 27491. It shall be the duty of the coroner to inquire
15 into and determine the circumstances, manner, and
16 cause of all violent, sudden, or unusual deaths;
17 unattended deaths; deaths wherein the deceased has not
18 been attended by a physician in the 20 days before death;
19 deaths related to or following known or suspected
20 self-induced or criminal abortion; known or suspected
21 homicide, suicide, or accidental poisoning; deaths known
22 or suspected as resulting in whole or in part from or
23 related to accident or injury either old or recent; deaths
24 due to drowning, fire, hanging, gunshot, stabbing,
25 cutting, exposure, starvation, acute alcoholism, drug
26 addiction, strangulation, aspiration, or where the
27 suspected cause of death is sudden infant death
28 syndrome; death in whole or in part occasioned by
29 criminal means; deaths associated with a known or
30 alleged rape or crime against nature; deaths in prison or
31 while under sentence; deaths known or suspected as due
32 to contagious disease and constituting a public hazard;
33 deaths from occupational diseases or occupational
34 hazards; deaths of patients in state mental hospitals
35 serving the mentally disabled and operated by the State
36 Department of Mental Health; deaths of patients in state
37 hospitals serving the developmentally disabled and
38 operated by the State Department of Developmental
39 Services; deaths under such circumstances as to afford a
40 reasonable ground to suspect that the death was caused

1 by the criminal act of another; or, and any deaths
2 reported by physicians or other persons having
3 knowledge of death for inquiry by coroner. Inquiry in
4 pursuant to this section does not include those
5 investigative functions usually performed by other law
6 enforcement agencies.
7 In any case in which the coroner conducts an inquiry
8 pursuant to this section, the coroner or a deputy shall
9 personally sign the certificate of death. If the death
10 occurred in a state hospital, the coroner shall forward a
11 copy of his or her report to the state agency responsible
12 for the state hospital.
13 The coroner shall have discretion to determine the
14 extent of inquiry to be made into any death occurring
15 under natural circumstances and falling within the
16 provisions of this section, and if inquiry determines that
17 the physician of record has sufficient knowledge to
18 reasonably state the cause of a death occurring under
19 natural circumstances, the coroner may authorize that
20 physician to sign the certificate of death.
21 *For the purpose of inquiry, the coroner shall have the*
22 *right to exhume the body of a deceased person when*
23 *necessary to discharge the responsibilities set forth in this*
24 *section.*
25 Any funeral director, physician, or other person who
26 has charge of a deceased person's body, when death
27 occurred as a result of any of the causes or circumstances
28 described in this section, shall immediately notify the
29 coroner. Any person who does not notify the coroner as
30 required by this section is guilty of a misdemeanor.
31 SEC. 3. Section 27491.1 of the Government Code is
32 amended to read:
33 27491.1. In all cases in which a person has suddenly
34 died under such circumstances as to afford a reasonable
35 ground to suspect that the person's death has been
36 occasioned by the act of another by criminal means, the
37 coroner is required to immediately, upon receiving
38 notification of the death report it both by telephone and
39 written report to the chief of police, or other head of the
40 police department of the city or city and county in which

AB 543

— 6 —

1 the death occurred, or to the sheriff of the county if the
2 death occurred outside the incorporated limits of a city,
3 determining that such reasonable grounds exist, shall
4 immediately notify the law enforcement agency having
5 jurisdiction over the criminal investigation. Notification
6 shall be made by the most direct communication
7 available. The report shall state the name of the deceased
8 person, if known, the location of the remains, and all
9 other information received by the coroner relating to the
10 death.
11   SEC. 4.   Section 27491.2 of the Government Code is
12 amended to read:
13   27491.2.   (a)   The coroner or his the coroner's
14 appointed deputy, on being informed of a death and
15 finding it to fall into the classification of deaths requiring
16 his or her inquiry, may immediately proceed to where
17 the body lies, examine the body, make identification,
18 make inquiry into the circumstances, manner, and means
19 of death, and, as circumstances warrant, either order its
20 removal for further investigation or disposition ; or
21 release the body to the next of kin.
22   (b)   For purposes of inquiry, the body of one who is
23 known to be dead from any of the causes or under any of
24 the circumstances enumerated described in Section
25 27491 shall not be disturbed or moved from the position
26 or place of death without permission of the coroner or his
27 the coroner's appointed deputy. Any violation of this
28 subdivision is a misdemeanor.
29   SEC. 5.   Section 27491.3 of the Government Code is
30 amended to read:
31   27491.3.   (a)   In any death into which the coroner is to
32 inquire, the coroner may take charge of any and all
33 personal effects, valuables, and property of the deceased
34 at the scene of death or related to the inquiry and hold
35 or safeguard them until lawful disposition thereof can be
36 made. The coroner may lock the premises and apply a
37 seal to the door or doors prohibiting entrance to the
38 premises, pending arrival of a legally authorized
39 representative of the deceased. However, this shall not
40 be done in such a manner as to interfere with the

— 7 —

AB 543

1 investigation being conducted by other law enforcement
2 agencies. Any costs arising from the premises being
3 locked or sealed while occupied by property of the
4 deceased may be a proper and legal charge against the
5 estate of the deceased. Unless expressly permitted by
6 law, any person who enters any premises or tampers with
7 or removes any lock or seal in violation of this section is
8 guilty of a misdemeanor.
9   (b)   Any such property or evidence related to the
10 investigation or prosecution of any known or suspected
11 criminal death may, with knowledge of the coroner, be
12 delivered to a law enforcement agency or district
13 attorney, receipt for which shall be acknowledged.
14   (c)   Except as otherwise provided in subdivision (d), it
15 shall be unlawful for any person to search for or remove
16 who searches for or removes any papers, moneys,
17 valuable property or weapons constituting the estate of
18 the deceased from the person of the deceased or from the
19 premises, prior to arrival of the coroner or without the
20 permission of the coroner, is guilty of a misdemeanor. At
21 the scene of any death, when it is immediately apparent
22 or when it has not been previously recognized and the
23 coroner's examination reveals that police investigation or
24 criminal prosecution may ensue, the coroner shall not
25 further willfully disturb the body or any related evidence
26 until the law enforcement agency has had reasonable
27 opportunity to respond to the scene, if their purposes so
28 require and they so request. Custody and control of the
29 body shall remain with the coroner at all times.
30   Reasonable time at the scene shall be allowed by the
31 coroner for criminal investigation by other law
32 enforcement agencies, with the time and location of
33 removal of the remains to a convenient place to be
34 determined at the discretion of the coroner.
35   (d)   A peace officer may search the person or property
36 on or about the person of the deceased, whose death is
37 due to a traffic accident, for a driver's license or
38 identification card to determine if an anatomical donor
39 card is attached. If a peace officer locates such an
40 anatomical donor card which indicates that the deceased

AB 543

— 8 —

1 is an anatomical donor, the peace officer shall
2 immediately furnish such information to the coroner
3 having jurisdiction.
4 "Peace officer," as used in this subdivision, means only
5 those persons designated in Sections 830.1 and 830.2 of the
6 Penal Code.
7 SEC. 6. Section 10250 of the Health and Safety Code
8 is amended to read:
9 10250. A physician, funeral director, or other person
10 shall immediately notify the coroner when he or she has
11 knowledge of a death which occurred or has charge of a
12 body in which death occurred under any of the following
13 circumstances:
14 (a) Without medical attendance ;.
15 (b) During the continued absence of the attending
16 physician ;.
17 (c) Where the attending physician is unable to state
18 the cause of death ;.
19 (d) Where suicide is suspected ;.
20 (e) Following an injury or an accident ; or.
21 (f) Under such circumstances as to afford a reasonble
22 ground to suspect that the death was caused by the
23 criminal act of another.
24 Any person who does not notify the coroner as
25 required by this section is guilty of a misdemeanor.
26 SEC. 7. Notwithstanding Section 6 of Article XIII B of
27 the California Constitution and Section 2231 or 2234 of
28 the Revenue and Taxation Code, no appropriation is
29 made by this act for the purpose of making
30 reimbursement pursuant to these sections. It is
31 recognized, however, that a local agency or school
32 district may pursue any remedies to obtain
33 reimbursement available to it under Chapter 3
34 (commencing with Section 2201) of Part 4 of Division 1
35 of that code.
36 SEC. 8. Notwithstanding Section 2231.5 of the
37 Revenue and Taxation Code, this act does not contain a
38 repealer, as required by that section; therefore, the
39 provisions of this act shall remain in effect unless and
40 until they are amended or repealed by a later enacted

1 act.

— 9 —

AB 543

O



# LEGISLATIVE
# INTENT SERVICE, INC.

712 Main Street, Suite 200, Woodland, CA 95695
(800) 666-1917 • Fax (530) 668-5866 • www.legintent.com

---

## DECLARATION OF MARIA A. SANDERS

I, Maria A. Sanders, declare:

I am an attorney licensed to practice in California, State Bar No. 092900, and am employed by Legislative Intent Service, Inc., a company specializing in researching the history and intent of legislation.

Under my direction and the direction of other attorneys on staff, the research staff of Legislative Intent Service, Inc. undertook to locate and obtain all documents relevant to the enactment of Assembly Bill 543 of 1985. Assembly Bill 543 was approved by the Legislature and was enacted as Chapter 304 of the Statutes of 1985.

The following list identifies all documents obtained by the staff of Legislative Intent Service, Inc. on Assembly Bill 543 of 1985. All listed documents have been forwarded with this Declaration except as otherwise noted in this Declaration. All documents gathered by Legislative Intent Service, Inc. and all copies forwarded with this Declaration are true and correct copies of the originals located by Legislative Intent Service, Inc. In compiling this collection, the staff of Legislative Intent Service, Inc. operated under directions to locate and obtain all available material on the bill.

### ASSEMBLY BILL 543 OF 1985:

1.  All versions of Assembly Bill 543 (Clute-1985);
2.  Procedural history of Assembly Bill 543 from the 1985-86 Assembly Final History;
3.  Analysis of Assembly Bill 543 prepared for the Assembly Committee on Public Safety;
4.  Material from the legislative bill file of the Assembly Committee on Public Safety on Assembly Bill 543;
5.  Material from the legislative bill file of the Assembly Republican Caucus on Assembly Bill 543;
6.  Analysis of Assembly Bill 543 prepared for the Senate Committee on Judiciary;

7.  Document from the legislative bill file of the Senate Committee on Judiciary on Assembly Bill 543;

8.  Analysis of Assembly Bill 543 prepared by the Legislative Analyst;

9.  Consent analysis of Assembly Bill 543 prepared by the Office of Senate Floor Analyses;

10. Material from the legislative bill file of the Office of Senate Floor Analyses on Assembly Bill 543;

11. Material from the legislative bill file of Assembly member Clute on Assembly Bill 543;

12. Post-enrollment documents regarding Assembly Bill 543.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 2nd day of July, 2007 at Woodland, California.

Maria A. Sanders

MARIA A. SANDERS

W:\WDOCS\ABLYBILL\ab\543\00041478

RECEIVED
JUL 24 2007

# County of San Diego

### OFFICE OF COUNTY COUNSEL
### CLAIMS AND INVESTIGATION DIVISION
1600 PACIFIC HIGHWAY, ROOM 355, SAN DIEGO, CALIFORNIA 92101-2469

July 23, 2007

Brenda Marsh
c/o Donnie R. Cox, Esq.
Law Offices of Donnie R. Cox
402 North Nevada Street
Oceanside, CA 92054-2025

Re: Client/Claimant: Brenda Marsh
    County File Number: 070209
    Date of Incident: April 13, 2007

SUBJECT: **NOTICE OF REJECTION OF CLAIM**

The subject claim has been received by the Claims Division for investigation and a
determination of liability, if any.

The liability of a governmental entity and its employees to a person who claims damages
is strictly limited by the laws within the State of California. Your claim has been
reviewed within the terms and restrictions of those laws. We regret that investigation has
obliged us to conclude that the claim must be rejected. Therefore, the claim is hereby
rejected this date.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was
personally delivered or deposited in the mail to file a court action on those causes of
action recognized under the California Tort Claims Act. See Government Code Section
945.6.

Sincerely,

Office of County Counsel
Claims and Investigation Division
(619) 531-4899



# County of San Diego

BRIAN D. BLACKBOURNE, M.D.
MEDICAL EXAMINER

**OFFICE OF THE MEDICAL EXAMINER**
5555 OVERLAND AVE., BLDG 14, SAN DIEGO, CALIFORNIA 92123-1270
TEL: (858) 694-2895   FAX (858) 495-5956

December 6, 2001

<u>**VIA FEDEX**</u>
<u>Airbill #8204 6251 6543</u>

Brenda Buell Warter
12751 Corte Rayito
Poway CA 92064-2507

Re:  Request for Public Records

Dear Ms. Warter:

This letter responds to your request dated November 29, 2001, copy enclosed, seeking copies of certain records potentially held by this Department relating to the death of Phillip A. Buell.  Your request was received initially by this Department on November 30, 2001.

The following responds to each of the numbered items in your November 29 letter:

1.  We have on file the number and type of microscopic slides as follows:

    a.  Seven (7) microscopic slides of heart, lung, liver, kidney, spleen and adrenal (on one slide), skin, dura mater, and brain tissue
    b.  One (1) paraffin block containing spleen and adrenal tissue

    All other slides, blocks and tissue specimens were transferred to other parties as noted in the enclosed documents.

2.  We have on file the Autopsy Report and supplementary sketches prepared by Roger A. Williams, M.D., Pathologist for the Coroner.  Copies of both documents are enclosed per item 4 below.

3.  There is no existing record that documents the number of homicide autopsies performed by Roger A. Williams, M.D., for this Department during the years 1970-1974 and 1980-1984, and we are therefore unable to provide a copy of such a record.

4.  The records in the original file regarding the autopsy performed by Roger A. Williams, M.D., are the two documents listed in item 2 above.  A complete listing of all documents in the file, including those two, follows:

    a.  Copy of Certificate of Death dated 4-29-83
    b.  Copy of Amendment of Medical and Health Section Data-Death dated 7-21-83

Brenda Buell Warter, December 6, 2001
Request for Public Records, page 2

 

    c.  Coroner's Report dated 7-25-83
    d.  Autopsy Report dated 5-19-83
    e.  Autopsy Report sketches dated 4/29/83
    f.  Order for Release dated 4-29, 1983
    g.  Card documenting release of remains to Lewis-Benbo Mortuary, dated 4-29-83
    h.  Chain of Custody form dated July 25, 1983, together with associated subpoena, correspondence and notes
    i.  Certified mail documents dated Jul 25 1983
    j.  Letter from Children's Hospital of Los Angeles dated January 6, 1984
    k.  Copy of letter to Benjamin H. Landing, M.D., Childrens Hospital of Los Angeles, dated January 11, 1984
    l.  Certified mail document dated Feb 13 1984
    m.  Letter from Brenda L. Buell dated 6-8-94
    n.  Letter from Brenda L. Buell dated April 23, 1995
    o.  Copy of newspaper article dated May 9, 1995
    p.  Letter from Tracy L. Emblem, Esq., dated March 4, 1996
    q.  Letter from Tracy L. Emblem, Esq., dated April 2, 1996
    r.  Letter from Brenda L. Buell dated April 6, 1996
    s.  Letter from Josephine A. Kiernan, Deputy District Attorney, dated April 9, 1996, also enclosing a copy of a letter from Kiernan to Tracy L. Emblem, Esq., of the same date
    t.  Copy of the April 9, 1996, letter from Josephine A. Kiernan with annotations
    u.  Evidence Release Form dated 4-9-96
    v.  Copy of letter from Emblem to Kiernan dated April 18, 1996
    w.  Evidence Release Form dated 4-24-96
    x.  Two phone messages dated 2/7 and 2/9, no year
    y.  One photograph of decedent

Copies of all the foregoing documents are enclosed except for the last item. Pursuant to California law, a court order is required to release any photograph of a decedent. Finally, assuming that Dr. Williams dictated the Autopsy Report, no dictation tapes remain in existence.

5. We have not forwarded your November 29 letter to any other parties.

Sincerely,

*L. P. Amborn*

Lloyd P. Amborn
Operations Administrator

Enclosures

cc:   Brian D. Blackbourne, M.D., Medical Examiner
      Margaret Stark, Senior Histology Technician

JS44
(Rev. 07/89)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Brenda L. Marsh

**DEFENDANTS**

County of San Diego; Jay S. Coulter; and Does 1-100

FILED

'07 OCT -1  PM 4: 03

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** La Plata, CO
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

BY:

DEPUTY

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Donnie R. Cox, Esq.
Dennis B. Atchley, Esq.
402 North Nevada St.
Oceanside, CA 92054-2025
(760) 400-0263

**ATTORNEYS (IF KNOWN)**

'07 CV  1923 LAB   (NLS)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only)     FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

42 U.S.C. 1983

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Medical Malpractice | ☐ 625 Drug Related Seizure | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - | of Property 21 USC881 | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 330 Federal Employers' | Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| &Enforcement of Judgment | Liability | ☐ 368 Asbestos Personal Injury | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 340 Marine | Product Liability | ☐ 650 Airline Regs | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| Loans (Excl. Veterans) | Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| of Veterans Benefits | ☐ 355 Motor Vehicle Product | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge 12 USC |
| ☐ 160 Stockholders Suits | Liability | Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 385 Property Damage | ☐ 730 Labor/Mgmt. Reporting & | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | Product Liability | Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | Security Act | | Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   **DEMAND $** to be determined   Check YES only if demanded in complaint:  JURY DEMAND ☒ YES ☐ No

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE William Q. Hayes   Docket Number 05CV1868WQH(AJB)

DATE Sept 27 2007

SIGNATURE OF ATTORNEY OF RECORD

#143006  #350  No  10/1/07

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 143006   — KD

# October 01, 2007
# 15:58:52

# Civ Fil Non-Pris
USAO #.: CIVIL FILING; 07CV1923
Judge..: LARRY A BURNS
Amount.:              $350.00 CK
Check#.: BC 6374

# Total—>  $350.00

FROM: MARSH V. SAN DIEGO, ET AL
      CIVIL FILING