1  LAW OFFICE OF DONNIE R. COX
   DENNIS B. ATCHLEY, SBN: 70036
2  DONNIE R. COX, SBN: 137950
   402 North Nevada St.
3  Oceanside, CA 92054-2025
   (760) 400-0263
4
   LAW OFFICE OF PAUL W. LEEHEY
5  PAUL W. LEEHEY, SBN: 92009
   210 E. Fig St., Suite 101
6  Fallbrook, CA 92028
   (760) 723-0711
7
   ATTORNEYS FOR PLAINTIFF
8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN CALIFORNIA DISTRICT**

11  BRENDA L. MARSH,                    )   CASE NO: 07 CV 1923 JLS (AJB)
                                        )
12          Plaintiff,                  )   **MEMORANDUM AND POINTS AND**
                                        )   **AUTHORITIES IN OPPOSITION TO**
13                                      )   **DEFENDANTS' MOTION FOR**
                                        )   **SUMMARY JUDGMENT/**
14  vs.                                 )   **ADJUDICATION**
                                        )
15  COUNTY OF SAN DIEGO, JAY S          )   Date:       November 4, 2010
    COULTER; and DOES 1 to 100,         )   Time:       1:30 p.m.
16  Inclusive,                          )   Courtroom: 6
                                        )
17          Defendants.                 )   The Honorable Janis L. Sammartino
    _____    )

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

        B.  Argument. Defendants' Motion Should be Denied In Its Entirety
            As It Is Restricted To Only One of Numerous Autopsy Photographs
            Coulter Improperly Obtained. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     PLAINTIFF  HAS A FEDERALLY AND
        STATE PROTECTED PRIVACY INTEREST IN THE DEATH IMAGES
        OF HER SON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

V.      COULTER IS NOT ENTITLED TO QUALIFIED IMMUNITY . . . . . . . . . . . 14

VI.     DEFENDANTS' ATTEMPT TO CHARACTERIZE THE SUBJECT
        PHOTOGRAPH(S) AS PUBLIC INFORMATION IS UNAVAILING. . . . . . . .15

VII.    COULTER'S ACCESS DOES NOT EXEMPT HIM FROM
        PROTECTING PLAINTIFF'S PRIVACY RIGHTS. . . . . . . . . . . . . . . . . . . . . .17

VIII.   COULTER WAS UPSET WITH HIS CONVICTION BEING SET ASIDE,
        "NOT A LEGITIMATE CONCERN" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

IX.     TRIALABLE ISSUES EXIST AS TO COULTER'S NEW CLAIM OF
        USING THE PHOTO (#14) FOR TRAINING PURPOSES . . . . . . . . . . . . . . . .19

X.      COUNTY'S CLAIM OF NO LIABILITY UNDER *MONELL* FOR
        COULTER'S ACTIONS DURING HIS EMPLOYMENT IS
        WITHOUT SUPPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.  County's Failure to Set Policy or Train Its Employees Was Deliberately
            Indifferent to Plaintiff's Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

XI.     PLAINTIFF HAS RAISED SUFFICIENT GENUINE ISSUES OF MATERIAL
        FACTS TO SUPPORT HER STATE LAW CAUSES OF ACTION. . . . . . . . . . 22

XXI.    SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

1

# TABLE OF AUTHORITIES

2

## Federal Cases

3

*Anderson v. Liberty Lobby Inc.*
(1986) 477 U.S. 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

4

*Cox Broadcasting Corporation v. Cohn*
(1975) 400 U.S. 469 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

5

*Cleveland v. Policy Management Systems Corp.*
(1999) 526 U.S. 795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

6

7

*Craig v. Harney*
(1947) 331 U.S. 367, 374 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 6

8

*Department of Justice v. Reporters Comm. For Freedom of Press*,
(1989) 489 U.S. 749 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

9

10

*Eastman Kodak Co. v. Image Technical Services Inc.*
(1992) 504 U.S. 451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

11

*Gonzales v. Spencer*
(9th Cir. 2003) 336 F. 3d 832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

12

13

*Harlow v. Fitzgeral*
(1982) 457 U.S. 800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

14

*Masson v. New Yorker Magazine Inc.*,
(1991) 501 U.S. 496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15

16

*Monell v. New York City Dept. Of Soc. Serv.*
(1978) 436 U.S. 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 20

17

*National Archives and Records Admin. v. Favish*,
(2004) 541 U.S. 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

18

19

20

## State Cases

21

*Catsouras v. Dept. of California Highway Patrol*
(2010) 181 Cal. App. 4th 856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 23

22

*Diola v. State Board of Control*
(1982) 135 Cal. App. 3d 580 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

23

24

## Federal Statutes

25

Title 42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 8,15, 18, 20,

26

Title 5 U.S.C. 552(b)(3), (6), (7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9 , 13

27

28

## California Civil Code

43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## State Statutes

Code of Civil Procedure §129 . . . . . . . .   . .4, 5, 8, 9, 11, 13, 14 , 15, 20, 21, 22, 23, 24

Welfare and Institutions Code §827 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

## Government Code

Code 6254 ( c ) and (k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . 6

## Penal Codes

4900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

4904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

## Constitutions

California Constitution, Article IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

COMES NOW the Plaintiff, BRENDA. MARSH, by and through her attorneys of record, and submits this Memorandum of Points and Authorities in support of her opposition to Defendants COUNTY OF SAN DIEGO and JAY COULTER'S Motion for Summary Judgment.

This opposition will be based on this memorandum of points and authorities, the items Judicially Noticed under Federal Rule of Evidence 201 and lodged with Plaintiff's Notice of Lodgement, the declaration of Dennis B. Atchley, the declaration of Brenda Marsh, Plaintiff's Objections and Motion to Strike Portions of Defendants' declarations (submitted herewith), and on such other and further evidence as may be presented at the hearing of this motion.

The basis of this opposition will be that Defendants have failed to meet their burden to assert sufficient facts to support summary judgment and that there are numerous genuine issues of material fact on every issue described in Defendants' motion, and that summary judgment is therefore improper and must be denied.

## I.  STATEMENT OF FACTS

In April of 1983,  Brenda Buell's, now Marsh's (hereinafter BRENDA or Plaintiff) son Phillip Buell fell from a couch in his home hitting his head on the fireplace hearth.  (Autopsy report dated 4/28/83, Exhibit "1" to Plaintiff's RJN). The fall, together with resuscitative measures employed by Childrens' Hospital physicians, caused extreme cerebral edema which resulted in his death (Deposition of  Roger A.  Williams at 298:12 - 14, Exhibit "2" to Plaintiff's RJN). Unfortunately, due to  insistence by Children's Hospital physicians, Plaintiff's  boyfriend  Kenneth Marsh (KENNETH) was prosecuted for Phillip Buell's death by  San Diego County Deputy District Attorney JAY COULTER (COULTER).

An autopsy was performed on Phillip, during which photographs were taken of him by San Diego Police Department evidence technician Al Start in accordance with COUNTY practice at the time (See Stipulation By Parties As To Testimony of COUNTY'S Person(s) Most Knowledgeable, dated 5/28/10 (hereafter Stipulation Re:

1  PMK), Exhibit "3" to Plaintiff's RJN,).

2       DDA COULTER obtained a conviction of Ken Marsh by entering into evidence

3  what his expert witness Children Hospital doctors testified were "autopsy" photographs

4  of Phillip Buell.  (See Excerpts from Deposition  of COULTER dated April 13, 2007, at

5  pages 15:2-17:25 as  Exhibit "4"to  Plaintiff's RJN.)

6       After an unsuccessful appeal, and an unsuccessful Writ of Habeas in 1995,

7  KENNETH  filed another Writ in 2002 which was initially resisted by the County D.A.

8  's office, but then reevaluated after the election of a new District Attorney in 2003. After

9  obtaining an independent forensic review the D.A.'s office determined not to object to

10 the Writ of Habeas, and joined in Marsh's Motion to Dismiss and the conviction of

11 Marsh was set aside. (Request to Grant the Petition and Set Aside Petitioner's

12 Conviction dated 8/3/04, Exhibit "5" to Plaintiff's RJN).

13      KENNETH  was released from Prison and within two months thereafter married

14 BRENDA who had been the persistent force behind obtaining his release from prison .

15 (See Declaration of Brenda Marsh).

16      Thereafter KENNETH pursued a Penal Code section 4900 proceeding, and after a

17 lengthy administrative hearing  opposed by the State Attorney General's office, a

18 finding of innocence was made by the hearing officer, and thereafter the Assembly, the

19 Senate, and the Governor's office affirmed that decision and passed legislation awarding

20 KENNETH  statutory compensation under PC 4904 of $756,900 for his erroneous

21 conviction and imprisonment ( Proposed Decision and Order dated 1/04/06,  Exhibit 6

22 to Plaintiff's RJN; SB 1202, dated 1/25/06, Exhibit "7"to Plaintiff's RJN)

23      During a deposition of COULTER as a witness in Ken Marsh's civil rights action

24 it was first learned that while still working at the District Attorneys office, but after

25 completion of the  Marsh criminal trial, in approximately 1995, COULTER had copied

26 the numerous autopsy photographs of Phillip Buell, stating he did so for the purposes of

27 convenience while at the DA's office and to keep them as a "memento."   (Deposition

28 of COULTER 15:2 - 17:25 - Exhibit "4"  to Plaintiff's RJN)

1   During that deposition COULTER produced a binder of material (identified as

2   exhibit 2 to that deposition) which he had accumulated on the KENNETH matter;

3   which binder included 23 photographs of Phillip Buell taken during his autopsy[1],

4   sixteen (16) of which were referred to as "autopsy" photographs during the Kenneth

5   Marsh criminal trial and appeal). (Declaration of Dennis B. Atchley; Decision in *People*

6   *v. Marsh* (1985) 175 Cal. App. 3d 987- Exhibit "8" to Plaintiff's RJN).[2]

7   However after the setting aside of Marsh's conviction and upon learning of the

8   publicity Marsh was receiving in January of 2006 from his PC 4904 award from the

9   State of California, COULTER took offense to the setting aside of HIS conviction and

10   the publicity Marsh was receiving. Over the next five months, despite his former

11   employer's decision to set aside the conviction and the California legislature and

12   Governor's funding of Marsh's PC 4900 award, "private citizen" COULTER contacted

13   news reporters, television reporters and producers, prosecutors, legislators' offices, and

14   attorneys and physicians, attempting to state his opinions about the Marsh case. (See

15   "Marsh Case Journal," Bates Nos. 11 - 18, excerpt from Exhibit 2 to Dep. Of

16   COULTER, Exhibit "9" to Plaintiff's RJN).

17   COULTER admits he provided to Thom Jensen of KGTV in San Diego, and

18   Maura Dolan of the *Los Angeles Times,* at least one (1) autopsy photograph of Phillip

19   Buell, as part of his article/memo entitled "What really happened to Phillip Buell?";

20   which photograph was one of the several autopsy photographs he copied as a memento

21   while at the District Attorneys Office. ( Dep. Coulter at 166:22 - 167:11; 9:17 - 24,

22   lodged herewith as Exhibit "4" to Plaintiff's RJN) Excerpt from Exhibit "2" to Dep.

23   Coulter, Bates Nos. 335 - 338, Exhibit "11" to Plaintiff's RJN.).

24   What COULTER does not reveal in this motion is that in 2006 he also provided

25   one of Phillip's autopsy photograph to investigator Robert Abel, and that in 2007 he

27   [1]Coulter's file contained 5 copies of exhibit 14, and 6 copies of other autopsy photographs. See Declaration of Dennis B. Atchley

28   [2] See Objections and Motion to Strike filed concurrently herewith.

1  provided all of the  photographs he had (Exhibit 2 to his deposition to attorney Deborah

2  McCarthy. (See Marsh Case Journal, Exhibit "10"  to Plaintiff's RJN at Bates No. 15,

3  18).

4        However, since its passage in 1968, California Code of Civil Procedure section

5  129 specifically protects individuals and families from the copying and reproduction of

6  such photographs without a court order, for "unrelated or improper purposes," as an

7  invasion of their privacy. (See Legislative History of CCP 129, Chapter 6 at p. 38,

8  Exhibit "12" to Plaintiff's RJN).

9                              **II.  STATEMENT OF CASE**

10        Motions to Dismiss were granted in part to Plaintiff's original and First Amended

11  Complaints as to portions of Plaintiff's first and second causes of action only after this

12  Court considered the Plaintiff's complaints and also after taking extensive judicial

13  notice of facts "not subject to reasonable dispute" submitted by both Plaintiffs and

14  Defendants.  (See this Court's  ruling on Motion to Dismiss dated August 4, 2008,  at

15  Page 7, Line 17, Page 5, Lines 22-25 as  Exhibit "13" to Plaintiff's RJN).

16        What remained  was Plaintiff's First Cause under 42 U.S.C. 1983 against

17  COULTER for violations of Plaintiff's civil rights during employment as a Deputy

18  District Attorney;  Second Cause  under *Monell* against  COUNTY for COULTER's

19  conduct during his employment and the COUNTY'S deliberate indifference to the

20  privacy rights of Plaintiff; and  Third to Sixth Causes for negligent and intentional

21  infliction of emotional distress, violation of state civil rights, and for injunctive relief.

22        In denying and granting in part Defendants' Motions to Dismiss, the Court

23  determined that Plaintiff had adequately pled a violation of CCP §129, and took

24  ***"judicial notice of the sixteen (16) photographs (Pl. Exhibit 13) for their existence;***

25  ***the fact that each was an exhibit in the Marsh criminal trial and the COULTER***

26  ***deposition, respectively; and the fact that COULTER testified that he copied and***

27  ***retained those photographs."***

28        The Court's  rulings, and limitations to Plaintiff's complaints, and as to the facts

1  of which it took judicial notice, are now the law of this case, and Defendants cannot

2  now contradict these findings by declarations that contradict earlier sworn testimony.

3  (See Plaintiff's Objections and Motion to Strike filed concurrently herewith).

4       Defendants now file this Motion for summary judgment asserting  that CCP §129

5  does not apply to only one (1) photograph (CTE14) (of the numerous photographs

6  COULTER reproduced and retained), by asserting  that CTE14 is not subject to CCP

7  §129.  They do so despite the fact that the photographs of Phillip (including CTE14)

8  were taken by a police evidence technician during his autopsy (in accordance with the

9  COUNTY's practice at that time) ( See Stipulation Re PMK dated 5/28/10, Exhibit "3"

10  to Plaintiff's RJN), the fact that CTE14 was later identified as one of the 16 "autopsy"

11  photographs during Kenneth Marsh's criminal trial (during witness examinations and

12  closing argument) and appeal (See Ex. "8" to Plaintiff's RJN)  (Excerpts from transcript

13  in *People v. Marsh,* dated 11/22/1983 through 11/28/1983 - Exhibit "14" to Plaintiff's

14  RJN), and the fact that COULTER himself described the photograph as an "autopsy"

15  photograph in his deposition (Deposition of  COULTER, dated 5/24/2007 at page

16  320:16-321:3 -  Exhibit "15" to Plaintiff's RJN).

17       Defendants then claim Plaintiff has no privacy interest in CTE 14 under state and

18  federal law because the photo  was a public record that was entered into evidence during

19  a judicial proceeding  (but citing no competent authority for that proposition). Such a

20  position is contrary to the fact that the trial photographs were released to the District

21  Attorneys office only upon entry of a Court Order(see Declaration and Order for

22  Release of Exhibits entered 2/18/93 and COULTER'S declaration, Exhibit "16"  to

23  Plaintiff's RJN), and the numerous and various restrictions, and due process rights,

24  imposed by law upon the release of public records (ranging from the restrictions of the

25  California Public Records Act (CPRA) enacted in 1968 (see Government Code section

26  6254 (c) and (k));  restrictions on Juvenile Court records (Welfare & Institutions Code §

27  827); and the federal Freedom of Information Act (FOIA) exclusions (5 U.S.C.

28  §552(b)(3), (6), & (7)); in addition to the more specific CCP §129 restrictions and rights

directly applicable in this matter .

Defendants then make the bare claim that since Defendant COULTER had access to CTE 14 at all relevant times while a district attorney, he was not bound by CCP §129 (and presumably CPRA or FOIA) even after completion of the criminal trial (again citing no competent authority that he would not be subject to the restrictions of Federal and State law regarding those death images).

COULTER then claims, for the first time, and contrary to his deposition testimony, that he used CTE 14 for purposes of instructing law enforcement and health care providers during his tenure as a DDA. (See declaration of COULTER at para. 7 - 10).  However, this Court must strike those paragraphs of COULTER'S sham affidavit which contradict his earlier deposition testimony.( See  Plaintiff's Motion to Strike filed concurrently herewith).  (At a minimum his "new" testimony creates a genuine issue of material fact for the jury to decide.)

Defendants further claim COULTER is entitled to qualified immunity to the 1983 cause of action because Plaintiff's right to privacy with respect to CTE 14 was not clearly established.  They do so although CCP §129 was enacted in 1968 and clearly states its purpose was to protect the privacy of individuals and families from the use of their family member's post mortem photographs for unrelated and improper purposes. (Additionally, in 1967 the Freedom of Information Act (FOIA), 5 U.S.C. § 552, was enacted which codified federal  common law protections of privacy by identifying specific exemptions from disclosure at subsections (b)(3) (items specifically exempted by statute), (b)(6) (personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy),  (b)(7)(C)(records or information compiled for law enforcement purposes, that could reasonably be expected to constitute an unwarranted invasion of personal privacy); and that in 1968 the California Public Records Act (CPRA) was enacted, establishing similar restrictions and due process rights to such  private material).

Defendants then claim that no cognizable constitutional right of Plaintiff has been

1   violated, and even if it were, Plaintiff cannot show COUNTY'S District Attorney's

2   Office policy and/or training program caused a constitutional violation (despite

3   COUNTY'S acknowledged lack of any policy or training on such protections).

4        Then Defendants boldly assert that Plaintiff has not stated any claims under her

5   state law causes of action.  They do so despite COULTER'S admitted copying of the

6   photographs while as a DDA in 1995 (for his own convenience and as a memento), his

7   retaining all of them upon his retirement, and thereafter his reproducing at least one of

8   those photograph(s) to three different individuals (Jensen, Abel and McCarthy). Doing

9   so by incorporating a photograph into a computer saved article/memo in an attempt  to

10   challenge the publicity Plaintiff's husband  received  from the setting aside of his

11   conviction COULTER obtained in 1983.

12        It is acknowledged  COULTER had every right under the First Amendment to

13   voice his opinions as to the Ken Marsh case.  However he did not have the right to

14   disregard  Plaintiff's  privacy rights and use the constitutionally and statutorily

15   protected photograph(s) to support his positions and opinions.

16        At a minimum such facts presents genuine issues of COULTER'S negligence,

17   intentional infliction of emotional distress, and violations of Plaintiff's state

18   constitutional and statutorily protected privacy and personal relations rights, and the

19   COUNTY'S direct and vicarious liability for that conduct and their failure to establish

20   policies and to train its employees on such protections..

21        Defendants have misstated, misconstrued  and misrepresented the applicable

22   facts, and have misinterpreted and ignored clearly established law regarding Plaintiff's

23   privacy and personal relations rights under federal and state constitutional and statutory

24   laws. As  Defendants have failed to show that no genuine issues of material fact exist as

25   to each of the Plaintiff's state law claims their motion must be denied.

26   ///

27   ///

28

### III.    POINTS AND AUTHORITIES

#### A.    LEGAL STANDARD

Summary Judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56 (c).

The burden is on the nonmoving party to come forth with 'specific facts showing that there is a genuine issue for trial.' *Anderson v. Liberty Lobby Inc.* (1986) 477 U.S. 242. (Emphasis in original). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *Ibid.*

In ruling on a motion for summary judgment, all reasonable inferences must be drawn in the opposing party's favor, both where the underlying facts are undisputed and where they are in controversy. At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services Inc.* (1992) 504 U.S. 451, 456.

Summary judgment cannot be granted where the opposing party's evidence or reasonable inferences from such evidence raise a "genuine dispute" as to any "material" fact shown by the moving party. Thus, where words or conduct may be interpreted in several ways, one supporting the motion and one controverting it, summary judgment must be denied. *Masson v. New Yorker Magazine Inc.* (1991) 501 U.S. 496.

The undisputed  facts in this case support a determination that genuine issues of material facts exist such that a jury could reasonably conclude:

A. That Defendant COULTER violated Plaintiffs civil rights under 42 U.S.C. 1983 as set forth in California's CCP  §129 and both federal and state constitutional rights of privacy, by illegally copying and reproducing a total of 24  death photographs of Phillip,  including the  16 indisputable trial "autopsy" photographs, for an unrelated and improper purpose,  while he was a district attorney; based upon his own testimony that he did so for his own convenience and to keep them  as a memento;

B. That the COUNTY OF SAN DIEGO through its DISTRICT ATTORNEY'S OFFICE violated *Monell* by having a policy and custom of deliberate indifference in failing to properly train and instruct its district attorney personnel regarding the required safeguards and protections that both Federal and State common laws and statutes (specifically CCP §129 and 5 U.S.C. §552(b)(3) & (7) FOIA exclusions)  provide to families in regards to death and autopsy photos of those deceased;

C. That Defendants COULTER, and COUNTY OF SAN DIEGO under the theory of *respondeat superior*, are civilly liable to Plaintiff under state law for COULTER'S admitted negligence, intentional infliction of emotional distress, invasion of privacy, and violating her civil rights under Civil Code  § 43 and 52.1 through COULTER'S illegal copying and reproducing, for unrelated and improper purposes, the indisputable autopsy photographs of Phillip Buell while he was a deputy district attorney (based upon his testimony that he did so for his convenience and to keep them as a memento); and

D. That Defendant COULTER violated CCP § 129 and Plaintiff's federally and state protected privacy rights to death photographs by his copying and dissemination of at least one of the autopsy photographs to news person(s) and an investigator in 2006, (and all photographs to an attorney in 2007), and in doing so is personally liable to Plaintiff for his negligence and intentional infliction of emotional distress and violation of Plaintiffs State protected privacy and personal relations rights.

E. That Plaintiff is within the class of persons who will be harmed by the COUNTY'S failure to train and police its own District Attorney's office as to the protections and requirements of CCP  §129 and the federal and state protected rights of privacy in death photographs unless and until the appropriate policies and training are implemented by COUNTY.

On summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inference to draw from the facts;  these are jobs for the fact finder. *Anderson v. Liberty Lobby* (1986) 477 U.S. 242, 255.

**B.     ARGUMENT - DEFENDANTS MOTION SHOULD BE DENIED IN ITS ENTIRETY AS IT IS RESTRICTED TO ONLY ONE OF NUMEROUS AUTOPSY PHOTOS COULTER IMPROPERLY OBTAINED**

Defendants have restricted their Motion for Summary Judgment to apply to only one (1) autopsy photograph (hereinafter" CTE 14")(of the numerous photographs he reproduced and took with him upon retirement); asserting (on information and belief - see Motion to Strike) that it was the only photograph taken by COULTER when he retired, and that he only provided that one photograph to only Thom Jensen.

However there were **24** autopsy photographs produced by COULTER during his deposition in the *Kenneth Marsh v. County* civil rights case to which he was not a party (see Exhibit "17" to Plaintiff's RJN). Those photographs were provided as part of COULTER's "Marsh Binder" which was attached as Exhibit 2 to his deposition (which included the 16 trial photographs that were submitted under seal as exhibit 13 to Plaintiff's Request for Mandatory Judicial Notice in response to Defendants' first Motion to Dismiss, and which this Court took Judicial Notice of as being copied and retained by COULTER upon his retirement).

It is acknowledged that CTE 14 is the only photograph alleged by COULTER to have been provided to newspaper reporter Thom Jensen (and possibly to Maura Dolan) as part of his article/memo "What Really Happened to Phillip Buell?" Thus that photograph would be applicable to the copying and dissemination violations by COULTER occurring in 2006. However Plaintiff's complaint is not limited to just one photograph but to all of the photographs COULTER copied and retained, of which CTE14 is only one.

Moreover, COULTER's own "Marsh Case Journal" in his "Marsh Binder" confirms that in addition to emailing reporter Jensen his article/memo "What Really Happened to Phillip Buell?"on April 17, 2006 (which included an autopsy photograph of Phillip), COULTER also admits that on March 14, 2006 he gave a copy of a photograph of the back of Phillip's neck to investigator Robert Abel, and that on April 3, 2007(when he was a "private person" witness and not a party in the Ken Marsh civil

1  rights case) sent by email "the contents of the Marsh Case email folder, the contents of

2  the Marsh Case folder, and the Marsh Case Journal" (which including all of the

3  photographs) to attorney Deborah McCarthy. (See Exhibit "8" to Plaintiff's RJN at page

4  18).

5      It also can be reasonably inferred from a review of COULTER's Marsh binder

6  Index and "Marsh Case Journal" that additional copies of CTE 14 (individually or as

7  part of his computer article/memo "What Really Happened to Phillip Buell?") and/or

8  copies of the other photographs were reproduced and/or copied (by email or otherwise)

9  to other individuals in addition to Thom Jensen, Robert Abel, and Deborah McCarthy

10  (such as to Dolan, Colin Murray, Esq., other reporters, doctors, etc).[3]

11      Plaintiff's complaints' causes of action **apply to all of the autopsy photographs**

12  that Defendant COULTER copied after completion of the Ken Marsh criminal trial.

13  This court has already taken judicial notice of the fact that sixteen (16) of those

14  photographs were copied and retained by COULTER in its Motion to Dismiss ruling of

15  August 4, 2008.   Furthermore, Defendants acknowledged in their second Motion to

16  Dismiss argument that "The Court has already ruled that COULTER's conduct in

17  reproducing the photographs as a COUNTY employee is a viable federal civil rights

18  claim," but then  argue that COULTER's dissemination of one photograph in 2006 was

19  an act of a "private citizen" during post employment.  As stated by Defendants in that

20  motion "The Court has already ruled on this issue;" the same applies here!

21      This matter concerns much more than the one photograph (CTE 14).   However,

22  Defendants chose to base the entirety of their Motion upon the copying and

23  reproduction of CTE 14.  While CTE 14  relates to the 2006 reproduction and

24  dissemination to Thom Jensen, and to Robert Abel; it is just one (1) of the many

25  photographs COULTER made copies of and kept as a memento (a clearly "improper

26  purpose" under  CCP § 129's legislative history, as well as a violation of  the federal and

27

28
      [3]  It is significant to note that COULTER does not state in his declaration submitted with this
      motion, that he has not copied or reproduced photographs(s) in any other instances.

state constitutional privacy and due process rights which Plaintiff mother has in death, and/or autopsy, photographs of her child ).

Based upon Defendants' Motion's limitation to only one of the numerous photographs, and based upon the genuine issues of disputed facts raised herein, Defendants' Motion should be denied in its entirety on that basis alone.  (It should also be denied due to the undisputed fact that COULTER admits he reproduced at least CTE 14 to Jensen , and as the evidence shows that he also provided a copy to Robert Abel, and all of the photographs to Deborah McCarthy.  (At a minimum a genuine issue exists as to which of the photographs were retained and/or reproduced by COULTER and to whom they were distributed.)

## IV.   PLAINTIFF HAS FEDERALLY AND STATE PROTECTED PRIVACY INTERESTS IN THE DEATH IMAGES OF HER SON

Defendants acknowledge that Plaintiff  has a common law right of privacy in the death images of her son, citing  *Catsouras v. Dept. of California Highway Patrol*, 181 Cal. App. 4th 856, 864 (2010).  What Defendants do not address is that the right of privacy of a family to the death images of a family member, specifically those taken during the course of an autopsy, have been long established under both federal and state law, well before the *Catsouras* decision.

Under Federal common law as discussed in *National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, at 168, (discussing *Department of Justice v. Reporters Comm. For Freedom of Press*, (1989) 489 U.S. 749) the Supreme Court identifies  "this well-established cultural tradition acknowledging a family's control over the body and death images of the deceased has long been recognized at common law." (*Id* at 168)).

In fact that well recognized right was  codified in 1967 when 5 U.S.C. § 552, FOIA,  codified common law protections of privacy by identifying specific exemptions from disclosures at (b)(3) (items specifically exempted by statute), (b)(6) (personal and medical files) and (b)(7)(investigative files ).  Codification of such rights in California

---

also occurred in 1968  by the enactment of the CPRA, as well as the more specific

applicable statute here enacted pursuant to Article IV of the California Constitution with

the passage of CCP § 129 (see legislative history of CCP §129, filed herewith as Exhibit

"20" to Plaintiff's RJN).

However Defendants analysis and reading of CCP § 129 is misleading and

erroneous by attempting to limit the statute's applicability to copies or reproduction

taken "by or for the coroner."  However, such interpretation ignores the statute's

wording which identifies that it applies to death photographs which were:

> (a)    taken by or for the coroner at the scene of the death (such wording was
>
>           added by amendment in 1985)[4]
>
>                      **or**
>
> (b)    taken in the course of a post-mortem examination or autopsy made by or
>
>           caused to be made by the coroner.

It is undisputed that the subject photographs which were taken by Mr. Start

during Phillips autopsy were identified as "autopsy" photographs at Kenneth Marsh's

preliminary hearing and trial. (See Exhibit "14" to Plaintiff's RJN.)  It is also

undisputed that in 1983, prior to the County switching from a Coroner system to a

Medical Examiners system in 1990, all photographs of decedents were taken by law

enforcement (as in the case of Phillip Buell).  (See Stipulation Re; PMK, Exhibit "3" to

Plaintiff's RJN).

Furthermore, Defendants ignore the last paragraph of the statute, as well as the

stated legislative purpose of the statute.  The last paragraph of CCP § 129 states:

> "This section shall apply to any such copy, reproduction, or
> facsimile, and to any such photograph, negative, or print,

---

[4]The wording "by or for the Coroner at the scene of death"was an additional prohibition added to CCP section 129 in 1985 so it "would extend the prohibition to photographs taken by or on behalf of the Coroner at the scene of death," in addition to the preexisting wording prohibiting photographs "taken in the course of a Coroner's autopsy or post mortem examination"(See Exhibit 15 to Plaintiff's RJN.

heretofore or hereafter made."

The legislative history of CCP § 129 specifically states that:

> "This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect.  The facts constituting such necessity are:
>
> It is policy of the State of California to protect individuals and families against unconscionable invasions of privacy.  The reproductions, **for unrelated or improper purposes**, of any photograph of the body of a deceased person taken in the course of a post mortem examination or autopsy is contrary to such policy."
> (See Exhibit "12" to Plaintiff's RJN).  (emphasis added)

The statute's reference to its applicability to "any such copy, reproduction or facsimile, and to any such photograph, negative, or print," when read with the stated legislative purpose, confirms that not only is the copying and reproduction of such death photographs prohibited without court order, but their retention for unrelated or improper purposes is similarly a violation. To interpret the statue otherwise would defeat the purpose for which it was enacted.

Since COULTER copied the photographs for the unrelated and improper purpose of retaining them as a memento, and as the evidence is clear that he still possessed those photographs by at least the time of his witness deposition in 2007, there should be no doubt (and there surely are genuine issues of material facts) that his copying and retention of those photographs was improper and in violation of CCP § 129's (as well as other state and federal constitutional and statutory) protections for the privacy rights of family members to death photographs of deceased family members.

## V.  COULTER IS NOT ENTITLED TO QUALIFIED IMMUNITY

In *Catsouras, supra*, the death images of that decedent did not involve autopsy or postmortem photographs and thus were not governed by CCP §129 as the photographs here are.   That Court, while finding state and federal law violations, only affirmed the state law negligence, intentional infliction of emotional distress and invasion of privacy grounds claimed by the Plaintiff.  It granted the individual defendants' qualified

immunity as to §1983 as the law was not reasonably clear in that case.

However, since at least 1968 the law on the right of privacy as to autopsy or post mortem death images was clearly set forth in CCP §129, and it would have been clear to any public official that the copying or reproduction of such photographs, for an unrelated or improper purpose, would be unlawful. The touchstone of any qualified immunity analysis is the precept that "a reasonably competent public official, [in defendants'] circumstances, should know the law governing his conduct." *Harlow v Fitzgerald* (1982) 457 U.S. 800, 818-819. Here, a reasonable Deputy District Attorney faced with the law and the circumstances noted herein would know that Plaintiff had both federally and state statutory and constitutional rights to privacy in her son's death images, as that had been codified in the law in California since 1968.

Based upon Defendant COULTER's deposition testimony that he reproduced those photos, without court order, and for his convenience and as a memento, at a minimum genuine issues exist precluding summary judgment.

## VI.   DEFENDANTS' ATTEMPT TO CHARACTERIZE THE SUBJECT PHOTOGRAPH(S) AS PUBLIC INFORMATION IS UNAVAILING

Defendants' reliance on *Cox Broadcasting Corporation v. Cohn* (1975), 400 U.S. 469 is unavailing, as the case is clearly distinguishable from the case at bar. In *Cox*, the Supreme Court found that the 1st and 14th Amendment protections of freedom of the press barred the State of Georgia from making a television network liable for the disclosure of information of a rape victim's name identified during a public trial. That case applied only to the accurate disclosure of the name of the rape victim, not to the copying or reproduction of physical evidence at trial.

Nothing in the *Cox* decision supports Defendants' assertion in their Motion that "Once displayed and admitted into evidence as a trial exhibit, the photograph became, and to this day remains, part of the public records." **No reported case so holds!** This matter does not involve the truthful publication of the information of a name of a victim obtained from public records as occurred in *Cox*. Instead, it involves the copying and

1  reproduction of physical evidence (photographs) which were specifically protected and

2  restricted by federal and state statute and constitutional rights of privacy.  The

3  publication of a name of a victim is far different than the replication and retention for an

4  improper purpose of a death photograph from a District Attorney's file which was also

5  entered as evidence in a court proceeding. (In *Cox* it was undisputed that the reporter

6  obtained the name of the rape victim from taking notes during trial).

7      Instead, COULTER admits that sometime after 1995 he made copies for himself

8  as a means of convenience and to keep as a "memento."  By doing so for those

9  "unrelated" and "improper purposes" he violated Plaintiff's rights of privacy.

10      Defendants' reference to *Craig v. Harney* (1947)  331 U.S. 367, 374 as support is

11  also misplaced. The issue in *Craig* was whether the court could hold a newspaper in

12  contempt for publication of an editorial criticizing a judge's court decision.  The dispute

13  concerned the freedom of the press versus whether the editorial articles constituted an

14  imminent threat to the administration of justice.  However, just as in *Cox*, the issue was

15  freedom of the press to report "information" received during a public trial; not the

16  copying of evidence entered at trial (or more precisely – the copying of protected

17  photographs in the District Attorney's file).

18      The facts are undisputed that the copying of the photographs were not for use in a

19  criminal action or proceeding (the trial ended in 1983).  Nor does COULTER provide

20  any evidence that he was part of the appellate or writ teams for the District Attorneys

21  office; and even if that were the case, there is no evidence that additional copies of the

22  photographs were required, as they were already in the District Attorney's case file.

23      If one accepts Defendants arguments there can be no restrictions on any

24  documents, exhibits or physical items that are deposited within the public realm, and all

25  such items are available to anyone once they become a part of a public record. While

26  that may be the case with oral information disclosed to the public, that is not the case

27  with physical items such as death photographs which have special statues which

28  address, control and limit their disclosure (such as SPRA, FOIA and CCP §129).

Additionally the need to obtain a court order regarding the trial autopsy photographs was confirmed in 1993 when a court order was entered for their release to the District Attorney's office. (See Declaration of Mr. Jay Coulter in Case No. HC 13701, dated 6/28/95, and Declaration and Order for Release of Exhibits dated 2/2/93, lodged herewith as Exhibit "16" to Plaintiff's RJN.) While those records may have been held in the public's domain (and accessible to COULTER due to the COUNTY'S lack of policy and training) that does not mean that they are not subject to restrictions and the rights of due process and privacy of protected individuals such as Plaintiff.

## VII.  COULTER'S ACCESS DOES NOT EXEMPT HIM FROM PROTECTING PLAINTIFF'S PRIVACY RIGHTS

Merely because DDA COULTER had access to the DA case file did not give him the right to copy or reproduce the subject death photographs without notice to Plaintiff and a court order; and specially not for the purpose of keeping them as a "memento" as he testified.  Here, COULTER's reproduction of the photographs years after the criminal trial was completed for that unrelated and improper purpose was completely unrelated to any criminal proceeding or authorized use.

Furthermore, COULTER's statement that he was the criminal trial counsel is a assertion without relevance – he will **always** be the criminal trial counsel who tried the Marsh case.  However that status did not, and still does not, authorize him to copy the subject photographs for his own use (which, by admission of the DA's office, had no policy in place to prohibit that unauthorized copying) and by ignoring clear and established law which protected privacy rights in death photographs . It is such unauthorized use which is prohibited and protected by the statute.

In *Gonzales v. Spencer* (9th Cir. 2003) 336 F. 3d 832 the 9th Circuit found liable under §1983 a private attorney representing the County of Los Angeles who had accessed a confidential file without the court order required by *Welfare & Institutions Code* §827.  In that case, it was recognized that the district court could have ordered disclosure of that file, but the file was presumptively protected until it did.  Here,

COULTER was required by clear and established law (since at least 1968) to obtain a court order to reproduce the death photographs which were in the District Attorneys Office's case file.  He did not do so and his ignorance of the law is no defense.

### VIII. COULTER WAS UPSET WITH HIS CONVICTION BEING SET ASIDE, NOT A "LEGITIMATE PUBLIC CONCERN."

COULTER argues he was addressing a matter of legitimate public concern when he disseminated photograph CTE14 to the media.  However, the prosecution of the *Marsh* case was conducted by the County of San Diego D.A.'s Office from which COULTER had retired.  Second, the District Attorney decided  not to oppose Kenneth Marsh's Writ of Habeas and not to retry the criminal case against him.  Third, under California law, Mr. Marsh has been declared factually innocent of Phillip's murder. (See *Diola v. State Board of Control*, (1982) 135 Cal. App. 3d 580, 588  fn. 7).

A review of COULTER's "Marsh Case Journal" (Exhibit "9" to Plaintiff's RJN) supports a very reasonable assumption that former DDA COULTER did not agree with, and was upset with, the decisions of the standing District Attorney, the Attorney General's office, the California Legislature and the Governor's office regarding the setting aside of Marsh's  conviction and the findings of his innocence and the monetary award to him that resulted.

While COULTER had the right under the First Amendment to state his opinions about those events, he did not have the right to disseminate illegally obtained copies of evidence (photographs) related to that reversed conviction.  It is that dissemination, even in light of the District Attorney's, Attorney General's, Legislature's and Governor's positions on the case, which support Plaintiff's claims of invasion of privacy, and also provide sufficient evidence of the "malice" COULTER had in doing so because "his" conviction of Ken Marsh was reversed!  His conduct has caused damage to the mother of the accident victim Phillip Buell!

///

## IX.  TRIABLE ISSUES EXIST AS TO COULTER'S NEW CLAIM OF USING THE PHOTO (#14) FOR TRAINING PURPOSES

COULTER, for the first time, in his declaration attached to the Motion for Summary Judgment, states that he used CTE 14 in training presentations during his tenure as DDA.  However, when asked in his deposition if there was any particular reason why he kept the files, he stated he did so in case he was contacted about the matter (while he was at the DA's office), to use in lectures at colleges like San Diego State, and to keep them as a "memento."  (It is significant to note that in this motion COULTER does not identify any of the purported training to law enforcement and health care providers that he now alleges, nor does he provide any documentation of the same). Furthermore, the alleged exception that COULTER asserts in this Motion is not a "use by any law enforcement agency" that would come within the exception, and most surely would not apply when he was no longer employed by the public agency.

Regardless, his retention and reproduction of the photograph(s) for an "improper purpose" (his convenience and as a memento) and his reproductions in 2006 and 2007 while as a retired DDA (as a "private" person as COUNTY  argued in their Motions to Dismiss) is not protected in any manner.

Finally, a party to a summary judgment motion cannot create a triable issue of fact by submitting a declaration contradicting his own deposition testimony.  This rule applies whether the deposition testimony involved a prior "factual" contradiction or a "legal conclusion." *Cleveland v. Policy* Management Systems Corp. (1999) 526 U.S. 795, 806. (See Plaintiff's Motion to Strike Portions of the Sham Affidavit of Coulter, filed concurrently herewith). COULTER'S attempt to create such an issue here should not be accepted, especially when considered with his misrepresentations as to the number of photographs he kept (his declaration states only "on information and belief" that he took only one photograph with him upon retirement, when his Marsh Binder shows entirely different), and his failure to acknowledge that he also provided copies of photo(s) to others, such as Abel and McCarthy.

## X. COUNTY'S CLAIM OF NO LIABILITY UNDER *MONELL* FOR COULTER'S ACTIONS DURING HIS EMPLOYMENT IS WITHOUT SUPPORT

Defendant COUNTY'S argument that no *Monell* claim exists merely restates this Court's prior ruling that COULTER's post employment conduct in disseminating photograph 14 five years after his retirement was not under color of law or with the significant aid by the COUNTY. But the Court did not preclude Plaintiff from asserting COULTER's §1983 liability up to his retirement and the COUNTY's *Monell* liability during that period.

Defendant claims, for the first time in this Motion, and inconsistent with his prior testimony, that COULTER had lawful access to the photographs.  First they assert that because he was the trial attorney of record, he somehow had unrestricted access to the photos.  Second, they assert he used CTE 14 in unspecified training presentations. (See COULTER declaration in Support of Defendants' Motion for Judgment at paragraphs 7, 8  and 9.)

However, COULTER had every opportunity to revise and amend his deposition responses to reflect those alleged actions, but did not.  Furthermore, just as the attorney in *Gonzales v. Spencer (supra)*  had access to confidential material due to his position as a state actor (under color of law), so too did COULTER have access to the subject photographs in the District Attorney's file.  But having access to the file did not give him the authority to copy the photographs for his own use, convenience and as a keepsake "memento" as he admits he did.

The legislative history of CCP §129 confirms that COULTER's reproduction of these photographs, for "unrelated and improper purposes" is contrary to the policy to protect individuals and families from invasions of their privacy.  At a minimum, triable issues exist based upon the inconsistencies between COULTER's prior testimony and his new declaration filed with this Motion.

///

## A.   COUNTY'S FAILURE TO SET POLICY OR TRAIN ITS EMPLOYEES WAS DELIBERATELY INDIFFERENT TO PLAINTIFF'S RIGHTS

It is clear that the County of San Diego's District Attorney's office did not properly instruct and train its employees on the law of privacy as to death photographs, which was clearly established under both Federal (FOIA) and State (CPRA) law in 1967 and 1968, as well as the more specific and applicable to the  passage in 1968 of  CCP §129.  COUNTY states its policies to be only that their Deputy District Attorneys are required to "follow the law."  (See Defendants Responses to Request for Admissions and Special Interrogatories #1 and 2 --Plaintiff's RJN Exhibit #18.)  However, that is the standard required of all citizens**.**   The fact that COULTER admitted he never knew of CCP §129 or its prohibitions ( See Exhibit "15" to Plaintiff's RJN) further confirms that no such training was provided.

It is ironic that the San Diego County District Attorneys office, which is empowered to be the enforcer  of California laws, failed to properly instruct, train, and ensure compliance with CCP §129 (as well as CPRA &  FOIA) when its employees and personnel had special (and apparently unlimited)access to such death photographs. (Even by 1998,  the COUNTY's medical examiner's office had such policies for its employees. ( See Deposition of Amborn, dated April 6, 2010 at 15:20 - 16:2, lodged as Exhibit "19" to Plaintiff's RJN.)

The undisputed facts are that the County District Attorney's Office had no policy or training in place to instruct its employees as to the constitutionally protected rights of privacy of family members such as Plaintiff in the death photographs of a deceased family member (regardless of whether it was taken during an autopsy or otherwise). Such failure was deliberately indifferent to Plaintiff's privacy rights and was the moving force behind the violation of those rights by COULTER who had no knowledge of such restrictions and rights of privacy due to the COUNTY'S lack of policies or training on those subjects.

///

# XI.  PLAINTIFF HAS  RAISED SUFFICIENT GENUINE ISSUES OF MATERIAL FACTS TO SUPPORT HER STATE LAW CAUSES OF ACTION

Defendants boldly, but without any authority, assert that Plaintiff's state causes of action fail.  However more than sufficient genuine issues of fact have been shown to defeat summary judgment.  First Defendant' motion only deals with one photograph when Plaintiff's causes address more than that one photograph.  Second, Defendants admit that COULTER copied and disseminated that one photograph.  He did so while pursuing his vendetta for the  reversal of his conviction of Marsh, and by using the protected photograph(s) of Phillip to prove his position.

At a minimum COULTER'S conduct was negligent in his duty under CCP section 129 (and CPRA & FOIA) to respect  Plaintiff's privacy and personal relations rights. Moreover genuine issues have been raised which support that COULTER'S conduct was done with  malice towards Plaintiff's husband, and to Plaintiff, for the setting aside of his conviction of Marsh.  COULTER did not like the fact that he could have been wrong in his conviction of Marsh or that the media was sympathetic to Marsh, and he was intent on doing whatever he could to correct that impression (even by violating the rights of the mother of the deceased child who married Ken Marsh).

Furthermore Defendant's argument that there is no causation because Plaintiff learned about COULTER'S violations, and the COUNTY'S lack of policies and training to protect her rights, from  her husband's attorneys is without any authority, and at a minimum are facts which the trier of fact must weigh. Are Defendant's saying that if Plaintiff learned of the violations from a man on the street, from a friend, or from a news reporter she would not be damaged?  Such a position is nonsensical!

Additionally any claims by Defendant as to comments regarding the true facts of her son's death during a television or radio show are first,  hearsay and objected to, are second, irrelevant to this motion for summary judgment, and third, are matters which the trier of fact should weigh.  Such reaching by Defendants confirms the unsupported nature of their motion.

Reasonable inferences from the facts shown here support genuine issues of

COULTER'S negligent and intentional infliction of emotional distress to Plaintiff Mother, as well as violations and complete disregard of her personal privacy rights, including by abuse of his position of public trust (as a DDA who was empowered to uphold those rights).  Just as the officers in *Catsouras* (*supra*) and the County's attorney in *Gonzalez v. Spencer*  (*supra*) were determined to be subject to liability for their conduct, so too is COULTER for his conduct here;  and so too is the COUNTY under the theories of vicarious liability for their employee's conduct and also for their complete indifference to implementing policies and training to protect  the constitutionally and statutorily protected rights of Plaintiff alleged here.

## XII.  SUMMARY

COULTER has confirmed  in sworn deposition testimony and through the documents that he produced during that deposition, that during his employment as a Deputy District Attorney, well after (1995) completion of the Kenneth Marsh criminal trial, he copied and retained for  improper purposes,  autopsy photographs of Plaintiff's young deceased child.  On that basis alone the Motion Defendants filed addressing **only** one of those numerous photographs should be denied.

Furthermore, COULTER was not the attorneys handling the appeal or writs and he cites no authority, or competent facts, which would allow him to escape the requirements of federal and state privacy and statutory law regarding the handling of death photographs.  He cannot now contradict his testimony by use of a sham declaration that contradicts his earlier deposition .

By his own admissions (including in his deposition and his Marsh Case Journal) COULTER violated CCP 129 and state and federal privacy and tort laws by reproducing Phillip's death photograph(s) into a computer generated article/memo which he then transmitted to at least the new media, an investigator and to an attorney without a court order. Doing so was in violation of statutory and privacy laws which were established in common law and enacted into statutes to protect the rights of those such as Plaintiff from invasions of their privacy rights.

There are also genuine issues which reasonably show that COULTER'S actions in copying, retaining and reproducing Phillip's autopsy photographs by ignoring clear and established law for his own convenience and to keep as a memento, and then to republish them (including in an article/memo challenging his past employer's decision to set aside his conviction of Ken Marsh) was in complete and direct disregard for the constitutionally and statutorily protected rights of Plaintiff.

COUNTY has acknowledged it has no policy and has not trained its district attorney's personnel as to the requirements of CCP §129 and the federally and state constitutionally protected rights of privacy of families to death photographs of family members, other than to instruct them "to follow the law."  Such failure, especially when considering that the District Attorneys Office's  duty is to uphold the law,  was deliberately indifferent to Plaintiff, resulting in violations by its employee COULTER's copying and retaining those photos for the improper purpose of keeping them as a memento.

As this Memorandum and the accompanying documents confirm (including Plaintiff's Objections and Motion to Strike filed concurrent herewith), there are numerous genuine issues of material fact and for that reason, Defendants' motion must be denied.


DATE: <u>September 27, 2010</u>          LAW OFFICE OF DONNIE R. COX

                                          <u>/s/ Dennis B. Atchley</u>
                                          DENNIS B. ATCHLEY, Attorney for Plaintiff, BRENDA L. MARSH