# WHAT REALLY HAPPENED TO PHILLIP BUELL?

Phillip Buell was two years and nine months old on April 27, 1983. He lived with his mother, his younger sister, and Kenneth Marsh, his mother's boyfriend. On that morning he suffered injuries that resulted in his death.

According to Kenneth Marsh, the adult who was taking care of him, Phillip and his sister were in the living room, playing on a sofa, when a toy or a book fell behind it. Kenneth Marsh stated that he pulled the sofa away from the wall to retrieve the item. He noticed that it was dirty or dusty back there so he left the room to get a vacuum cleaner.

As he left the room he heard a crash. He continued to another room to get the vacuum cleaner. At least ten seconds passed, maybe more, before he returned to the room where he had left the children. When he returned he found Phillip, unconscious, on the floor. He called 911 and paramedics responded. Phillip was taken to Alvarado Hospital, then transferred to Children's Hospital.

Phillip had received major trauma to his head, and several cuts and abrasions to the back of his neck. These cuts, according to the story told by Kenneth Marsh, had to have occurred when a glass dish fell and broke on the hearth, and Phillip fell onto the broken glass.

Phillip died the next day.

The major incision, according to the autopsy report, was a little over an inch long and 7/8 of an inch deep. The following photograph shows these cuts.



In the area where Phillip was found, after the fall, there was no evidence of heavy bleeding. Kenneth Marsh stated he placed a towel under Phillip's head. The towel was placed in evidence, and it contained only a small amount of blood.

335

Most of the shards of broken glass were recovered. No blood was found on any piece of glass.

No fragments or chips of glass were found in the cuts or on Phillip's neck.

**If Kenneth Marsh is telling the truth, the cut on the back of Phillip's neck did not bleed heavily at any time after it was inflicted.**

**What is the evidence concerning whether or not this cut would bleed?**

At the trial, six doctors testified for the prosecution. They all mentioned the deep cut on the back of Phillip's neck.

The six doctors who testified, and some excerpts from their testimony at the trial, follows.

**Samuel Strauss, MD. Emergency room physician at Alvarado Hospital.**
- He saw Phillip when he was brought in by ambulance.
- He noted the lacerations to the neck. He put his fingers into the wound to feel for evidence of broken bone, arterial bleeding or foreign bodies. He did not find any of those things.
- The laceration would have bled considerably. The bleeding would have begun within a few seconds of the injury.
- The lacerations were inconsistent with having been caused by glass because there was no evidence of glass around the cut.

**Irvin Kaufman, MD. Co-Director of the Intensive Care Unit at Children's Hospital.**
- He saw Phillip upon his arrival from Alvarado Hospital. He examined the back of his neck and discovered very large lacerations in the back of the neck on the left side. "And it was so large and so deep that I put on a set of sterile gloves to explore the wound and was able to put my fingers deeply in there and spread them to feel around to see if this was a penetrating wound to the base of the skull, or how deeply the injury went."
- "The wound was extremely clean and very deep, as if it was cut through, not only the superficial layers, but down through the tougher facial layers and into the muscle."
- There was no glass in the wound. The history given, of a fall onto a brick hearth and broken glass, is absolutely not consistent with the observed injuries.
- The lacerations at the back of the neck would have caused "massive bleeding". He can think of no mechanism, technique or situation which might have caused there to be no bleeding.

**Kenneth Ott, MD. Neurosurgeon.**
- He saw Phillip at Children's Hospital.
- There would have been bleeding from the neck injury. "The laceration goes into the muscle, it is very vast into the tissue." There would have been bleeding unless the patient was dead and had no blood pressure
- If victim received a blow to the head that would cause brain swelling, it might mean that a laceration would not bleed. However, this swelling would take some time, and in the interim; the cut would bleed.

**Ruth Stern, MD. Kaiser Permanente Medical Group**
- She was Phillip's physician.
- She saw Phillip at Children's Hospital the afternoon he was admitted. She examined the lacerations.
- The injuries are not consistent with the story of a fall onto a hearth.
- The lacerations would have caused immediate and extensive bleeding.

**David Chadwick, MD. Medical Director, Children's Hospital**
- He saw Phillip at Children's Hospital the afternoon he was admitted.

336

- He observed the cut or laceration to the neck. It was deep. A number of small vessels would be cut, and there would be a lot of bleeding.
- The cut could bleed four to eight ounces of blood before it stopped, unless a compress was applied.
- Injuries are inconsistent with the story given of a fall onto hearth and broken glass.

**Roger Williams, MD. Pathologist**
- He saw Phillip at Children's Hospital on the afternoon he was admitted, while he was still alive. Two days later he performed the autopsy.
- The major cut was about an inch deep. It went through the skin and the underlying tissue all the way to the bone. It was as deep as it could have been without penetrating the bone.
- In examining the lacerations: "I opened them up. Examined them in detail, looking to see what structures had been involved. I measured them, their width and depth. I looked to see if blood vessels had been severed. Looked to see if the lacerations had actually gone through to damage the spinal cord or the cervical vertebra and that was basically the extent of the examination."
- At the time of the injury "It would have been extremely rapid bleeding. This is one of the most richly bloody areas in the body. Large number of blood vessels are there and I have personally witnessed a number of injuries to this area immediately after they have formed and bleeding is just profuse."
- Both small arteries and veins were cut in this laceration.
- Story of a fall is not consistent with the observed injuries.
- There was no glass in the cut, although he would have expected to find some there.
- In examining the towel that had been placed under Phillip's head, he stated that the amount of blood in the towel would not be sufficient to account for bleeding from the cut. He would expect to see much more bleeding, possibly soaking the towel.

In order to show that Kenneth Marsh is innocent, his attorneys have relied on the statements of at least six doctors, Gregory Reiber, Sam Gulino, Jan Leetsma, Janice Ophoven, Michael Innis, and Thomas Schweller.

The last four of these doctors did not comment on the lack of bleeding at the scene or the lack of blood on the glass. Their focus was on other issues concerning internal head trauma, bleeding disorders, pre-existing disease, etc.

Of the two doctors who did comment on the lack of bleeding, the first, Dr. Gulino, stated that he was not troubled by the "absence of glass fragments in the wound or the absence of bleeding on the glass ashtray". He attempted to support this position by pointing out that the wounds were not bleeding "briskly" when the child was seen at Alvarado Hospital.

What, exactly, does this mean? That statement, without further explanation, has little value. Dr. Gulino does not specifically say that an injury of this type would _not_ be expected to bleed. He does not comment on the statements of the six doctors who examined the incision and stated, unanimously, that the wound would definitely bleed.

The second of these two doctors, Dr. Reiber, addressed the matter in detail, both in his declarations and in his lengthy testimony at the Sacramento hearing. He concluded that the evidence at the scene was consistent with an accidental fall as described by Mr. Marsh.

How did he explain the lack of bleeding? During the Sacramento hearing he testified as follows:

> Muscle tissue, and especially in that area of the neck, it's an interesting thing. You can actually get a sharp blade to not just cut muscle, but actually cut past through and between bundles of muscle tissue, and you

337

could get a fairly deep wound and you may not actually damage the muscle any more than just shoving some of it aside. In that case, you're really not going to get any bleeding from the muscle at all, because none of the blood vessels of the muscle layer have even been broken. <u>And since I didn't examine this injury myself, I can't say whether or not that was the case</u>. . . (Emphasis supplied).

This is a critical issue. What was the nature of the damage caused by the cut to the neck? At trial, Dr. Strauss, Dr. Kaufman, Dr. Ott, Dr. Stern, Dr. Williams, and Dr. Chadwick all testified to examining that cut. Dr. Strauss, Dr. Kaufman, and Dr. Williams examined it in detail. Dr. Williams specifically stated that small arteries and veins were cut in this laceration. All six doctors stated that the cut would bleed heavily.

Dr. Reiber, who admits he <u>did not</u> examine this specific cut, hypothesizes that a cut with dimensions similar to the cut on Phillip's neck, might not bleed.

Which opinion, "the cut would bleed", or "the cut would not bleed", has the strongest support?

At trial the jury was presented with the photograph of the cut, and the explanations of the six doctors who stated that the cut would bleed heavily. The jury knew that there was virtually no blood found at the place where the defendant stated the fall had occurred. They also knew there was no blood on the broken glass, and there were no glass fragments found in or around the injuries to the back of Phillip's neck.

They found that the story told by Kenneth Marsh was not consistent with the evidence found at the scene.

At the hearing in Sacramento, however, witnesses were called only by the attorneys for Kenneth Marsh. No witnesses were called to support the verdict at trial. Only one doctor, Dr. Reiber, testified. He had various theories to explain why the incision would not bleed, even though he admitted that he had not personally observed the major injury.

Dr. Reiber's theory of the case was adopted by the Deputy Attorney General and the hearing officer. All contradictory evidence was disregarded. It was decided that Kenneth Marsh, by a preponderance of the evidence, had proven he was not responsible in any way for the injuries that occurred to Phillip Buell.

What really happened to Phillip Buell? Will the question ever be answered? In 1983 a jury heard evidence at a criminal trial and decided Kenneth Marsh was guilty.

In 2005, a hearing officer heard testimony from witnesses called by the defendant and decided that Kenneth Marsh was not responsible, in any way, for the injuries suffered by Phillip.

**Look at the picture of the cut on the back of Phillip's neck.**

**Read the testimony of the six doctors who examined that cut.**

**Decide for yourself if you think this cut would bleed.**

**If the answer is "Yes", then the story told by Kenneth Marsh is false. The verdict of the jury was true.**

338