LAW OFFICE OF DONNIE R. COX
DENNIS B. ATCHLEY, SBN: 70036
DONNIE R. COX, SBN: 137950
402 North Nevada St.
Oceanside, CA 92054-2025
(760) 400-0263

LAW OFFICE OF PAUL W. LEEHEY
PAUL W. LEEHEY, SBN: 92009
210 E. Fig St., Suite 101
Fallbrook, CA 92028
(760) 723-0711

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# SOUTHERN CALIFORNIA DISTRICT

| | |
|---|---|
| BRENDA L. MARSH, | CASE NO: 07 CV 1923 JLS (AJB) |
| Plaintiff, | **PLAINTIFF BRENDA MARSH'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION TO HER MOTION FOR SUMMARY ADJUDICATION AGAINST COUNTY OF SAN DIEGO AND JAY COULTER PURSUANT TO FRCP 56 (d)** |
| vs. | |
| COUNTY OF SAN DIEGO, JAY S. COULTER; and DOES 1 to 100, Inclusive, | |
| Defendants. | Date: November 4, 2010<br>Time: 1:30 p.m.<br>Courtroom: 6 |

Comes now the Plaintiff and submits her points and authorities in Reply to the County and Coulter's Opposition to Plaintiff's motion for summary adjudication.

## I. DEFENDANTS ATTEMPT TO LIMIT PLAINTIFF'S CLAIMS TO ONE PHOTOGRAPH IS CONTRARY TO THE COURT'S PRIOR RULING

Defendants are misrepresenting the scope and nature of Plaintiff's motion for Summary Adjudication by attempting to limit it to only one photograph which was disseminated in 2006. However, Plaintiff's claims, and this motion, relate to more than one photograph. Previously this Court, In denying and granting in part Defendants' Motions to Dismiss, determined that Plaintiff had adequately pled a violation of CCP

§129, and took *"judicial notice of the sixteen (16) photographs (Pl. Exhibit 13) for their existence; the fact that each was an exhibit in the Marsh criminal trial and the COULTER deposition, respectively; and the fact that COULTER testified that he copied and retained those photographs."* (Ruling on Motion to Dismiss dated August 4, 2008, at Page 7, Line 17, Page 5, Lines 22-25, Exhibit "19" to Plaintiff's Request for Judicial Notice in Support of Reply ("RJN.REPLY").

The Court's rulings, and limitations to Plaintiff's complaints, and as to the facts of which it took judicial notice, are now the law of this case, and Defendants cannot now contradict these findings by declarations that contradict earlier sworn testimony. (See Plaintiff's Objections and Motion to Strike filed concurrently herewith). The basis for that finding by the Court from COULTER'S deposition testimony and the exhibits (photographs) he produced during that deposition (exhibit 2 to that deposition) still exist and cannot be ignored as Defendants would have the Court do here.

## II.  DEFENDANTS MISAPPLY THE STATUTE'S APPLICABLE WORDING

Defendants argue in their opposition that the photograph - ignoring the sixteen autopsy photographs at issue in this case - is/are not autopsy photographs protected by Code of Civil Procedure §129 because they were not "taken by or for the coroner" within the statute's language.  However Defendants analysis and reading of CCP § 129 is erroneous by its attempt to limit the statute's applicability to copies or reproduction taken "by or for the coroner at the scene of the death".  Such interpretation ignores the statute's wording that it applies to death photographs which were:

(a)   taken by or for the coroner at the scene of the death [1] **or**

(b)   taken in the course of a post-mortem examination or autopsy made by or caused to be made by the coroner. [Emphasis added]

---

[1] The wording "by or for the Coroner at the scene of death" was an additional prohibition added to section 129 in 1985 so it "would extend the prohibition to photographs taken by or on behalf of the Coroner at the scene of death," **in addition to** prohibiting photographs "taken in the course of a Coroner's autopsy or post mortem examination"(See Exhibit "20" to Plaintiff's RJN.REPLY).

It is undisputed that the subject photographs which were taken by Mr. Start during Phillips autopsy were identified as "autopsy" photographs at Ken Marsh's preliminary hearing and trial. (See Exhibit "1" to Plaintiff's RJN, filed August 2, 2010). It is also undisputed that in 1983, seven years before the switch from a Coroner system to a Medical Examiners system, all photographs of decedents were taken by law enforcement (as in the case of Phillip Buell). (See Stipulation By Parties As to Testimony of County's Person(s) Most Knowledgeable , Exhibit "9" to Plaintiff's RJN filed August 2, 2010 ).

Furthermore, Defendants ignore the last paragraph of the statute, as well as the stated legislative purpose of the statute. The statutes' last paragraph states  "This section shall apply to any such copy, reproduction, or facsimile, and to any such photograph, negative, or print, **heretofore or hereafter made."** The legislative history of CCP § 129 specifically states: " It is policy of the State of California to protect individuals and families against unconscionable invasions of privacy.  The reproductions, **for unrelated or improper purposes**, of any photograph of the body of a deceased person taken in the course of a post mortem examination or autopsy is contrary to such policy."(Exhibit "20" to Plaintiff's RJN.REPLY (emphasis added)).

The statute's reference to its applicability to "any such copy, reproduction or facsimile, and to any such photograph, negative, or print", when read with the stated legislative purpose, confirms that not only is the copying and reproduction of such death photographs prohibited without court order, but their retention for unrelated or improper purposes is similarly a violation.  To interpret the statue otherwise would defeat the purpose for which it was enacted.

Since COULTER copied the photographs for the unrelated and improper purpose of retaining them as a memento, and as the evidence is clear that he still possessed those  photographs (plural) by at least the time of his witness deposition in 2007, there should be no doubt  that his copying and retention of those photographs was improper

and in violation of CCP § 129 (as well as other state and federal constitutional and statutory) protections for the privacy rights of family members to death and autopsy photographs of their deceased family members.

### III. DEFENDANTS ARGUMENT THAT PLAINTIFF HAS NO PRIVACY INTEREST IN THE PHOTOGRAPHS IGNORES FEDERAL AND STATE LAW

Defendants then assert that Plaintiff does not have any privacy interest in the photograph (again ignoring all of the photographs the Court has already found Defendant to have copied and retained) because it/they are a public record. However it is clear that Plaintiff has a common law right of privacy in the death images of her son, see *Catsouras v. Dept. of California Highway Patrol*, 181 Cal. App. 4th 856, 864 (2010). The *Catsouras* court, while finding state and federal law violations, affirmed the state law negligence, intentional infliction of emotional distress and invasion of privacy grounds claimed by the Plaintiff. It granted the individual defendants' qualified immunity as to the §1983 as the law was not reasonably clear in that case.

However, in *Catsouras, supra*, the death images of that decedent did not involve post mortem photographs taken during an autopsy and thus were not governed by CCP §129 as the photographs here are.

Under Federal common law as discussed in *National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, at 168, (discussing *Department of Justice v. Reporters Comm. For Freedom of Press*, (1989) 489 U.S. 749) the Supreme Court identifies "this well-established cultural tradition acknowledging a family's control over the body and death images of the deceased has long been recognized at common law." (*Id* at 168)). That well recognized right was confirmed in 1967 when 5 U.S.C. § 552, The Freedom Of Information Act (FOIA), codified common law protections of privacy by identifying specific exemptions from disclosures at (b)(3) (items specifically exempted by statute), (b)(6) (personal and medical files) and (b)(7)(investigative files).

Confirmation of such privacy rights in California also occurred in 1968 by the

enactment of the California Public Records Act (CPRA), California Government code section 6251, *et. seq.*, as well as the specifically applicable statute here enacted in 1968 pursuant to Article IV of the California Constitution of CCP § 129 (see legislative history of CCP §129, as Exhibit "14" to Plaintiff's RJN, filed August 2, 2010 ).

Defendants' argument that the photographs are public records and their reliance on *Cox Broadcasting Corporation v. Cohn* (1975), 400 U.S. 469 is also unavailing, as the case is clearly distinguishable from the case at bar. In *Cox*, the Supreme Court found that the 1st and 14th Amendment protections of freedom of the press barred the State of Georgia from making a television network liable for the disclosure of information of a rape victim's name identified during a public trial.  That case applied only to the accurate disclosure of the name of the rape victim, not to the copying or reproduction of physical evidence at trial.

Nothing in the *Cox* decision supports Defendants' assertion in their Motion that "Once displayed and admitted into evidence as a trial exhibit, the photograph became, and to this day remains, part of the public records." (See page 5 lines 21-23). **No reported case so holds!**  This matter does not involve the truthful publication of the information of a name of a victim obtained from public records as occurred in  *Cox*. (In *Cox* it was undisputed that the reporter obtained the name of the rape victims from taking notes during trial).   Instead, this matter involves the copying and reproduction of physical evidence (photographs) which were specifically protected and restricted by federal and state statute and constitutional rights of privacy , including CCP §129, regardless of whether they were entered as evidence in a court proceeding.  COULTER admits that he made copies for himself (presumably from the District Attorneys office's case file) as a means of convenience and to keep Exhibit "14"  as a "memento" (Coulter Deposition at 15:2 to 17:25 - See Exhibit "2" to Plaintiff's RJN, filed August 2, 2010).

Defendants' reliance on  *Craig v. Harney* (1947) 331 U.S. 367, 374 as support is also misplaced.  The issue in *Craig* was whether the court could hold a newspaper in

1  contempt for publication of an editorial criticizing a judge's court decision, not the
2  copying and dissemination of a protected photograph(s).
3       The facts are undisputed that the copying of the photographs were not for use in
4  a criminal action or proceeding (the trial ended in 1983) and they were copied for an
5  unrelated or improper purpose.  Based thereon summary adjudication is proper

## IV.  COULTER IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants submit the Declaration of COULTER which states he did not know he had to "ask permission" to take the photographs home. (Declaration of COULTER at para. 14). Since at least 1968 the law on the right of privacy as to autopsy or post mortem death images was clearly set forth in CCP §129 (and the FOIA & CPRA),  and it would have been clear to any public official that the copying or reproduction of such photographs without court order would be unlawful. The touchstone of  any qualified immunity analysis is the precept that "a  reasonably competent public official, [in defendants'] circumstances, should know the law governing his conduct." *Harlow v Fitzgerald* (1982) 457 U.S. 800, 818-819.  Here, a reasonable Deputy District Attorney faced with the law and the circumstances noted herein would know that copying and taking photographs as a "memento" would be violative of Plaintiff's federal and state statutory and constitutional rights to privacy in her son's death images, as that had been codified in the law in California since 1968.

Merely because DDA COULTER had access to the District Attorney case filed did not give him the right to copy or reproduce the subject death photographs without notice to Plaintiff and  a court order.   Furthermore, COULTER's statement that he was the criminal trial counsel is a position without relevance here – he will **always** be the criminal trial counsel in the Kenneth Marsh case, but that status  did not, and still does not, authorize him to copy the subject photographs for his own use

In *Gonzales v. Spencer* (9th Cir. 2003) 336 F. 3d 832 the Ninth  Circuit found liable under §1983 a private attorney representing the County of Los Angeles who had

accessed a confidential file without the court order required by Welfare & Institutions Code §827. Here, COULTER was required by clear established (since 1968) law to obtain a court order to reproduce the death photographs. He did not do so and his ignorance of the law is no defense.

### V. COUNTY'S FAILURE TO TRAIN IT'S EMPLOYEES ON CLEARLY ESTABLISHED LAW WAS DELIBERATELY INDIFFERENT TO PLAINTIFFS PROTECTED PRIVACY RIGHTS

It is clear, and undisputed by COUNTY, that the District Attorney's office did not set any policy, and did not properly instruct and train its employees, on the clear and established laws and due process protections of the rights of privacy of family members as to death photographs of their family members. Those laws and due process protections were clearly established in California in 1968 with the enactment of CCP §129 (as well as the 1987 enactment of FOIA and 1968 enactment of CPRA).

COUNTY confirms that it only policies and training on the subject of the privacy right in death images to be only that their Deputy District Attorneys are required to "follow the law" (which is our societies requirements for all its citizens).

The fact that COULTER admitted he never knew of CCP §129 or its prohibitions (See Exhibit "4" to Plaintiff's RJN filed August 2, 2010 – the Deposition of Jay Coulter) further confirms that no such training was provided.

It is ironic that the San Diego County District Attorney's office, which is empowered to be the enforcer of California laws, failed to properly instruct, train, and ensure compliance with CCP §129 when its employees and personnel had special access to such photographs. (Even the COUNTY's medical examiner's office had such policies for its employees (see Exhibit "15" to Plaintiff's RJN, filed August 2, 2010)). Such failures on behalf of COUNTY were clearly the moving force behind the constitutional violations of Plaintiff's rights caused by COULTER'S copying and retention of the subject photographs during his employment for unrelated and improper purposes, and by his removal and retention of those photographs heretofore and

hereinafter made by him.

## VI. LACK OF PUBLICATION/LEARNING OF VIOLATIONS FROM ATTORNEYS IS IRRELEVANT

Defendants claim that the fact that the photograph was never published, and that Plaintiff learned of the illegal copying from her husband's attorneys somehow precludes her from suffering emotional distress. (Defendants' Memorandum at 14 - 15). However, Defendants cite no authority for either proposition, since none exists. Whether, and to what extent, Plaintiff suffered emotional distress when she learned of the illegal copying is a genuine issue of material fact for the jury and is not determinable on summary judgment.

It hardly matters how Plaintiff learned of COULTER's conduct, whether it was from the press, from a person on the street, or from her Husband's attorneys . The fact is that Plaintiff suffered emotional distress and loss of sleep at learning of COULTER'S actions.  Furthermore Defendants concede, at page 14 of their memorandum, that Plaintiff suffered emotional distress on inadvertently seeing one autopsy photograph at a conference in her husband's case.  This was devastating to her and would not have occurred but for COULTER's violations of her privacy rights and the COUNTY's deliberate indifference to those rights. (See Declaration of Dennis B. Atchley and Declaration of Brenda L. Marsh in Support of Reply).

## VII. PLAINTIFF HAS STATED VIOLATIONS OF CIVIL CODE § 43

Judge Hayes held in denying Defendants' Motion to Dismiss "The right to privacy is a personal one, it is the right of an individual to be left alone and not dragged into publicity," citing *Mau v. Rio Grande Oil* (N.D. Cal. 1939) 28 F. Supp 845, 846. Summary judgment is improper where a plaintiff has alleged a claim based on state law invasion of privacy statutes. *Simons v. County of Marin* (N.D. Cal. 1987) 682 F.Supp. 1463, 1475.

Here, the deposition of Plaintiff, excerpts from which were lodged by Defendants

in support of their Opposition, clearly show that Plaintiff had trouble sleeping when she learned of the reproduction of the photograph(s) and that she believed that COULTER had done so intentionally. (See Exhibit "C" to Defendants' Lodgment, at page 64:8 - 11). While Defendants claim that Plaintiff's emotional distress and inability to sleep were not caused by the illegal copying of the 16 photographs by COULTER, they have introduced **no evidence** in support of this claim.

Plaintiff has submitted uncontroverted evidence both of the illegal copying by COULTER and resulting emotional distress, and Defendants have failed to introduce any evidence that would raise a genuine issue of material fact on these issues (additionally Plaintiff specifically identified that her damages would be determined at trial, not in this motion for summary adjudication).

Defendants also claim at page 14 of their memorandum that COULTER'S conduct cannot be deemed outrageous or reckless because it was done to counteract claims by Plaintiff and her husband that Phillip's incised wounds were "scratches." However the conduct which is violative of Plaintiff's rights is not COULTER's voicing his opinion, as is his right under the First Amendment, but his use of statutorily and constitutionally protected death images of Phillip to do so!

It is also most disturbing that at pages 7:4-5, 15-16; and 14: 18-20 of their opposition to this motion (as well as in COULTER'S declaration), Defendants claim that either Plaintiff or her husband publicly described the incised wounds on the back of Phillip's neck as "scratches," referring to Exhibits "C" and "D," lodged by the County in support of their opposition on August 24, 2010. <u>Nowhere in either document do either Plaintiff or her husband refer to Phillip's wounds as "scratches,"</u> nor have they ever done so. (See Declaration of Brenda Marsh in Support of Reply). Defendants have no evidence of these alleged statements. (See Objections and Motion to Strike filed concurrently herewith.)

The evidence is clear that COULTER'S actions were violative of Plaintiff'

privacy rights protected by both Federal and state law which are actionable under California Civil Code section 43.  Plaintiff is entitled to summary adjudication on this issue as there is no genuine dispute that COULTER violated such rights of Plaintiff by his copying and retaining those photographs for an improper purpose, and his subsequent copying and dissemination of at least one photograph after his retirement in 2006. (See Plaintiff's Opposition to Defendant's MSJ also before this Court for reference to other copying and dissemination violations by COULTER).

## VIII.  CONCLUSION

The burden of bringing forth admissible evidence in opposition to a Motion for Summary Adjudication lies with Defendants.   In response to Plaintiff's motion, Defendants have simply offered a tortured reading of CCP §129, ignored clear and established law on privacy rights, and attempted to introduce "evidence" of statements by Plaintiff and her husband which were never made.  Defendants have thus failed to offer any genuine, relevant evidence which would raise any genuine issues of material fact and for this reason Plaintiff's request  for summary adjudication of the issues raised in her motion should  be granted.

DATED: October 4, 2010                              **LAW OFFICE OF DONNIE  R. COX**

By: /s/ Dennis B. Atchley
DENNIS B. ATCHLEY, Attorney
For Plaintiff BRENDA L. MARSH