1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **SOUTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9 BRENDA L. MARSH, | CASE NO. 07CV1923 JLS (AJB) |
| 10 Plaintiff, | **ORDER: 1) GRANTING IN PART DEFENDANTS' MOTION FOR** |
| 11 vs. | **SUMMARY JUDGMENT AND 2) DENYING PLAINTIFF'S MOTION** |
| 12 COUNTY OF SAN DIEGO, and JAY S. | **FOR SUMMARY JUDGMENT IN THE ENTIRETY** |
| 13 COULTER, | (Doc. Nos. 39, 41.) |
| 14 Defendants. | |

15

16      Presently before the Court is Plaintiff Brenda L. Marsh's motion for summary judgment

17  (Doc. No. 39 (Plaintiff's MSJ)) and Defendants Jay S. Coulter and County of San Diego's motion

18  for summary judgment.  (Doc. No. 41 (Defendants' MSJ).)  Also before the Court are the

19  associated oppositions and replies.  After consideration, the Court **GRANTS** Defendants' motion

20  for summary judgment on the 42 U.S.C. § 1983, *Monell*, and California Civil Code § 52.1 claims.

21  And having dismissed those claims, this Court **DECLINES** supplemental jurisdiction over the

22  remaining state claims and **DISMISSES** them **WITHOUT PREJUDICE**.  Plaintiff's motion for

23  summary judgment is **DISMISSED IN ITS ENTIRETY**.

24      For nearly three decades, the San Diego community has witnessed the legal drama

25  surrounding the Marsh family.  In 1983, two-year-old Phillip Buell died while in the care of

26  Kenneth M. Marsh.  The state prosecuted Mr. Marsh for Phillip's death and obtained a second-

27  degree murder conviction.  The conviction was affirmed on appeal.  Mr. Marsh went to prison.

28  Many years passed.

1    In 2003, Mr. Marsh filed his second petition for a writ of habeas corpus.  The San Diego

2  County Superior Court granted the petition at the request of the San Diego District Attorney,

3  whose recently consulted expert could not conclude beyond a reasonable doubt that Phillip was a

4  victim of child abuse.  The Superior Court set aside Mr. Marsh's conviction, and he was released.

5  By then, he had spent nearly twenty-one years in prison.

6    Not long after his release, Mr. Marsh filed a federal action against the County of San Diego

7  and the medical personnel involved in Phillip's autopsy.  From that case comes the factual basis

8  for this action.

9    As part of Mr. Marsh's case, his attorneys deposed Jay S. Coulter, the San Diego Deputy

10  District Attorney who tried Mr. Marsh's criminal prosecution.  Coulter testified that, during his

11  tenure as Deputy District Attorney, he photocopied sixteen autopsy photos taken of Phillip's

12  corpse.  Coulter further testified that, in February 2006—after his retirement from the District

13  Attorney's Office—he had disseminated at least one such photo to a newspaper and television

14  station.

15    Based on this testimony, Brenda L. Marsh—Mr. Marsh's wife and Phillip's mother—filed

16  the present action.  After three years of litigation and two rounds of Rule 12 motions, five causes

17  of action remain:

18    (1) A 42 U.S.C. § 1983 claim against Coulter for conduct occurring while Coulter was

19    employed by the County as deputy district attorney.

20    (2) A *Monell* claim against the County of San Diego for conduct occurring while Coulter

21    was employed by the County as deputy district attorney.

22    (3) An intentional infliction of emotional distress claim against Coulter and the County.

23    (4) A negligent infliction of emotional distress claim against Coulter and the County.

24    (5) Claims for violating California Civil Code §§ 43 and 52.1 against Coulter and the

25    County.

26  ///

27  ///

28  ///

07CV1923

1    The parties cross motion for summary judgment on every claim.  After consideration, the

2  Court grants summary judgment in favor of Defendants on the § 1983, *Monell*, and California

3  Civil Code § 52.1 claims.  With those claims dismissed, the Court declines supplemental

4  jurisdiction over the remaining state law claims.  They are dismissed without prejudice.

5                                              **LEGAL STANDARD**

6    Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where the

7  moving party demonstrates (1) the absence of a genuine issue of material fact and (2) entitlement

8  to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material,"

9  for purposes of Rule 56, means that the fact, under governing substantive law, could affect the

10  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v.*

11  *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must

12  be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

13    The initial burden of establishing the absence of a genuine issue of material fact falls on the

14  moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by

15  presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

16  demonstrating that the nonmoving party "failed to make a sufficient showing on an essential

17  element of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes

18  over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec.*

19  *Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

20    Once the moving party establishes the absence of genuine issues of material fact, the

21  burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed

22  fact remains.  *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported

23  summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."

24  *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all

25  inferences drawn from the underlying facts in the light most favorable to the nonmoving party.

26  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

27  ///

28  ///

07CV1923

**ANALYSIS**

The dueling motions for summary judgment aim to resolve every cause of action.  But the Court discusses only three causes of action here: the § 1983 claim against Coulter, the County's *Monell* liability, and violation of California Civil Code § 52.1.  The Court finds that Defendants are entitled to summary judgment on each of those claims.  And having resolved the federal causes of action, the Court declines to exercise supplemental jurisdiction over the remaining state claims and will not discuss them as a result.

**1.      Sixteen Autopsy Photos**

Before getting to the main analysis, the Court resolves a small point of contention.  Perhaps due to miscommunication, the parties dispute which autopsy photos are at issue in this case.  Plaintiff's first amended complaint alleges unauthorized copying of sixteen autopsy photos.  (Doc. No. 21 (FAC) ¶ 10.)  But Defendants' motion for summary judgment  focuses on just one.  (*See* Defendants' MSJ at 5–9.)  Doing so drew Plaintiff's ire.  (*See* Doc. No. 45 at 4–7.)  Ultimately, however, this is a non-issue.  Defendants state that their motion for summary judgment applies to all sixteen photos.  (Doc. No. 47 at 4.)  The Court agrees.  The parties' motions for summary judgment and the Court's Order on the matter concern all sixteen photos.

**2.      42 U.S.C. § 1983 Claim Against Coulter**

Plaintiff's § 1983 claim is the core of her complaint and the basis for federal jurisdiction.  Its fate affects not only Coulter, but also the *Monell* claim against the County.

Before embarking on the analysis, it is important to clarify which of Coulter's actions are at issue in this claim.  Pursuant to the Court's May 6, 2009 Order, Plaintiff's § 1983 cause of action exists to the extent it is "based on Coulter's liability for copying of the photos during his employment as a Deputy District Attorney."  (Doc. No. 26 at 4.)  Not at issue are allegations of reproducing the photos for dissemination, or the dissemination itself.  (*Id.*)

*A.      Legal Standard*

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983 is not a source of substantive rights but merely a method for

- 4 -

1  vindicating federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393–94

2  (1989).  To succeed on a § 1983 claim, a plaintiff must show "(1) that a right secured by the

3  Constitution or the laws of the United States was violated, and (2) that the alleged violation was

4  committed by a person acting under color of State law."  *Long v. Cnty. of L.A.*, 442 F.3d 1178,

5  1185 (9th Cir. 2006).

6  ***B.      Discussion***

7          There are two necessary prongs for § 1983 liability: (1) the violation of a right protected by

8  the Constitution or the laws of the United States (2) committed by a person acting under color of

9  state law.  *Long*, 442 F.3d at 1185.  Coulter conceded that he was acting under the color of state

10  law while employed as a prosecutor.  (Doc. 6 at 6; Doc. 20 at 8.)  Still at issue, however, is

11  whether copying autopsy photos constitutes a violation of a right protected by the Constitution or

12  the laws of the United States.

13          Plaintiff argues two ways that Coulter's photocopying violated a right protected by the

14  Constitution or United States law.  First, Plaintiff argues that reproduction of autopsy photos

15  directly violates a right protected by the Constitution or the laws of the United States.

16  Alternatively, Plaintiff argues that California Code of Civil Procedure § 129 creates a right

17  protected by the Fourteenth Amendment Due Process Clause.  The Court considers each path in

18  turn.

19          The first path—that reproduction of autopsy photos directly violates a right protected by

20  the Constitution or laws of the United States—is not fruitful.  The Court discusses the violation of

21  a constitutional right first.

22          Plaintiff argues that Coulter's copying violated Plaintiff's constitutional right to privacy.

23  (FAC ¶ 18; Plaintiff's MSJ at 3, 6; Doc. No. 45 at 6, 9, 12.)  The Supreme Court has held that the

24  right to privacy is implicitly guaranteed by the Constitution as part of the Due Process Clause of

25  the Fourteenth Amendment, *see Carey v. Population Services International*, 431 U.S. 678, 684

26  (1997), or as one of the "penumbral" rights formed by the Bill of Rights, *Griswold v. Connecticut*,

27  381 U.S. 479, 484–85 (1965).  The right is limited, however.  It protects "a person's most basic

28  decisions about family and parenthood . . . as well as bodily integrity."  *California v. F.C.C.*, 75

1    F.3d 1350, 1361 (9th Cir. 1996) (citing *Planned Parenthood v. Casey*, 505 U.S. 833, 849 (1992)).

2    And to the extent the right exists, it has been held to encompass and protect "the personal

3    intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Paris*

4    *Adult Theatre I v. Slaton*, 413 U.S. 49, 65–66 (1973) (citing a panoply of cases). *See also*

5    *California v. F.C.C.*, 75 F.3d at 1361, n.12.

6          Given the case law, the Court finds that copying the autopsy photos did not violate

7    Plaintiff's constitutional right to privacy. That right does not encompass a relative's interest in a

8    decedent's autopsy photos. As crass as it may seem, Plaintiff's interest in the autopsy photos does

9    not fall within the class of most basic decisions about family, parenthood, or bodily integrity.

10   Plaintiff's argument that Coulter's reproduction of the photos directly violated a constitutional

11   right fails as a matter of law.

12         Alternatively, Plaintiff argues that the copying violated a right protected by United States

13   law. Plaintiff asserts that the Freedom of Information Act, 5 U.S.C. § 552(b), codifies a statutory

14   right to privacy in "the body and death images of the deceased." (Doc. 45 at 12–13.) And on

15   some level, the Supreme Court has stated this much. *Nat'l Archives and Records Admin. v.*

16   *Favish*, 541 U.S. 157, 170–71 (2004).

17         The basic purpose of the Freedom of Information Act is "to open agency action to the light

18   of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Each agency is

19   charged with making its records available to the public. Balanced against this freedom of

20   information are several exceptions preventing the release of certain information. One exception

21   prevents the release of information that "could reasonably be expected to constitute an

22   unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Another protects items

23   "specifically exempted from disclosure by statute." § 552(b)(3). And another protects "personnel

24   and medical files and similar files the disclosure of which would constitute a clearly unwarranted

25   invasion of personal privacy." § 552(b)(6). These exceptions form the basis of Plaintiff's privacy-

26   interest argument.

27         But any privacy interest formed out of the FOIA exceptions is formed in the FOIA context.

28   And to determine whether the stated privacy interest applies for § 1983 purposes, a relevant

1   inquiry is whether the statutory "provision in question was intended to benefit the putative

2   plaintiff." *Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 106 (1989) (internal

3   formatting omitted).

4         With this in mind, this Court finds it inappropriate to extend a privacy interest found in the

5   FOIA context into the present circumstances.  It is not apparent that FOIA exceptions, preventing

6   agencies from releasing certain categories of information, were meant to apply to Plaintiff and the

7   autopsy photos.  Coulter's photocopying is not comparable to a FOIA request.  And as a state

8   employee, Coulter is not even under FOIA's purview.  Consequently, Plaintiff cannot establish a

9   violation of a right protected by the laws of the United States through FOIA.

10        At this juncture, Plaintiff cannot satisfy the remaining § 1983 prong on the grounds that

11   reproducing autopsy photos directly violates a right protected by the Constitution or laws of the

12   United States.  The Court now considers the alternative path to establishing the remaining § 1983

13   prong.

14        Plaintiff argues that California Code of Civil Procedure (CCP) § 129 creates a liberty

15   interest protected by the Due Process Clause.  (FAC ¶ 15; Plaintiff's MSJ at 6, 9; Doc. No. 45 at

16   15.)  And assuming Coulter violated § 129, Plaintiff contends Coulter also ran afoul of the

17   Constitution in a manner satisfying the remaining § 1983 prong.

18        Section 129 creates a process for reproducing images made of a deceased person.  The

19   Court provides an abbreviated discussion of the statute here.  As a starting point, § 129 prevents

20   the reproduction of any photographs or video recordings "of the body, or any portion of the body,

21   of a deceased person."  Cal. Civ. Proc. Code § 129.  There are several exceptions, however.  For

22   instance, an image can be reproduced "for use in a criminal action . . . that relates to the death of

23   that person."  *Id.*  It can also be reproduced after a request to a state court has been granted.  *Id.*

24        The parties assume that § 129 creates a liberty interest protected by the Due Process

25   Clause.  They focus their energy discussing whether § 129 applies to the photos Coulter copied.

26   Defendants hope to establish that § 129 does not apply to the sixteen photos.  By doing so, copying

27   the photos could not violate § 129 and would not amount to a constitutional violation.  Plaintiff

28   argues the opposite.  Upon entering the fray, however, the Court finds it necessary to challenge the

1  assumption that § 129 creates a liberty interest protected by the Due Process Clause.

2      "State law may bear upon a claim under the Due Process Clause when the property

3  interests protected by the Fourteenth Amendment are created by state law." *Davis v. Scherer*, 468

4  U.S. 183, 193, n.11 (1984).  But this doctrine "was recently limited . . . to a certain core of

5  prisoners' rights." *Campbell v. Burt*, 141 F.3d 927, 930–31 (9th Cir. 1998) (citing *Sandin v.*

6  *Conner*, 515 U.S. 472, 483–84 (1995)).  And that limitation forecloses the use of § 129 as grounds

7  for a due process claim.  This case, § 129, and the photos at issue are not related to prisoners'

8  rights.

9      To the extent the doctrine extends beyond prisoners' rights and captures the situation at

10  hand, the Court nonetheless finds that § 129 does not create a right protected by the Due Process

11  Clause.  "To create a right protected by the Due Process clause, the state law must provide more

12  than merely procedure; it must protect some substantive end." *Bonin v. Calderon*, 59 F.3d 815,

13  842 (9th Cir. 1995).  Section 129 does not protect a substantive end; at most it provides a

14  procedure.  Indeed, § 129 fails to mention, explicitly or implicitly, whom it is intended to benefit.

15  And in doing so, the Court finds that the statute does not create or protect a substantive end that

16  Plaintiff can assert.  Violating the statute cannot, therefore, form the basis for a § 1983 violation.

17      Section 129 does not create a right protected by the Due Process Clause.  Thus, even

18  assuming § 129 applies to the autopsy photos, and even assuming Coulter violated § 129, such a

19  violation could not establish the remaining prong of the § 1983 claim.

20      Both paths to establishing a violation of a right protected by the Constitution or federal law

21  are blocked.  Plaintiff is unable to establish the last prong necessary for § 1983 liability; Coulter's

22  actions do not violate a right protected by the Constitution or the laws of the United States.  As a

23  result, Defendant is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

24  *C.    Conclusion*

25      Plaintiff asserts a 42 U.S.C. § 1983 cause of action against Coulter for his copying of

26  autopsy photos while employed as a Deputy District Attorney.  The claim fails because Plaintiff

27  cannot establish that Coulter's actions amounted to a violation of a right protected by the

28  Constitution or the laws of the United States.  First, photocopying autopsy photographs does not

07CV1923

1  violate the constitutional right to privacy.  Second, the Freedom of Information Act does not create

2  a right to privacy relevant to this situation.  And finally, California Code of Civil Procedure § 129

3  does not create an interest protected by the Due Process Clause of the Fourteenth Amendment.

4  Summary judgment in favor of Defendants is appropriate on Plaintiff's § 1983 claim.

5  **3.      *Monell* Claim Against the County of San Diego**

6          Plaintiff's *Monell* claim is a § 1983 claim against the County of San Diego.  *Monell v.*

7  *Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  And a necessary component of a § 1983 claim

8  is a violation of a right protected by the Constitution or the laws of the United States.  *Long*, 442

9  F.3d at 1185.  Unfortunately, Plaintiff's claim against the County is also predicated on Coulter's

10  copying of the autopsy photos.  (Doc. No. 26 at 4.)  And as discussed above, these acts cannot

11  establish a § 1983 claim.  Thus, even assuming all the allegations were true, Plaintiff's *Monell*

12  claim fails.  Summary judgment on this claim is appropriate in favor of Defendants.

13  **4.      California Civil Code 52.1**

14          Plaintiff also asserts claims for violations of California Civil Code §§ 43 and 52.1.  The

15  Court discusses the § 52.1 claim only.

16          Civil Code § 52.1 provides an individual whose exercise or enjoyment of state or federal

17  rights have been interfered with, or attempted to be interfered with, with a private cause of action.

18  Cal. Civ. Code § 52.1.  To make a claim, Plaintiff must establish an attempted or completed act of

19  interference, accompanied by threats, intimidation, or coercion. *City and Cnty. of S.F. v. Ballard*,

20  136 Cal. App. 4th 381, 408 (Cal. Ct. App. 2006). *See also* Cal. Civ. Code 52.1(a).

21          Plaintiff bears the burden of establishing this cause of action.  And here, Plaintiff has failed

22  to do so.  There is no evidence of acts perpetrated by Coulter that could be construed as threats,

23  violence, or intimidation.  Even assuming Coulter attempted or completed an act of interference,

24  the lack of threats, violence, or intimidation is fatal to Plaintiff's claim.  Summary judgment on

25  this claim is appropriate in Defendants' favor.

26  **5.      Conclusion**

27          Both parties moved for summary judgment on all causes of action.  But the Court found it

28  suitable to consider only three: the § 1983 claim, the *Monell* claim, and the California Civil Code

07CV1923

1  § 52.1 claim.  Plaintiff failed to establish a legal basis for the argument that copying autopsy

2  photographs violated a right protected by the Constitution or the laws of the United States.  Thus,

3  Plaintiff failed to make out a necessary element of her § 1983 claim against Coulter and the

4  County of San Diego.  Moreover, California Civil Code § 52.1 requires Plaintiff to show the

5  presence of threats, intimidation, or coercion.  Plaintiff failed to do so.  The Court grants summary

6  judgment in favor of Defendants on all three claims.

7                                         **CONCLUSION**

8           For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART**

9  Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary

10  judgment in the entirety.  Summary judgment on the § 1983 claim, the *Monell* claim, and the

11  California Civil Code § 52.1 claim is **GRANTED** in favor of Defendants.  Having resolved the

12  federal causes of action, the Court **DECLINES** supplemental jurisdiction over Plaintiff's state law

13  claims.  Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional

14  distress, and California Civil Code § 43 claims are **DISMISSED WITHOUT PREJUDICE**.

15           Moreover, Plaintiff's request for judicial notice (Doc. Nos. 45-5, 46-5) and supplemental

16  objections and motion to strike (Doc. Nos. 45-3, 46-3) are unnecessary to the disposition of these

17  matters.  The Court **DISMISSES** both **AS MOOT**.

18           This order concludes the litigation in this matter, the Clerk **SHALL** close the file.

19           **IT IS SO ORDERED.**

20

21  DATED:  February 11, 2011

22                                                      _Janis L. Sammartino_
                                                        Honorable Janis L. Sammartino
23                                                      United States District Judge

24

25

26

27

28

- 10 -                                          07CV1923